(275 P.3d 914)
No. 105,362

STEPHEN W. MCCOY, *Appellee*, v. DOROTHY K. BARR (KATHERINE DEPEW, Successor in Interest), *Appellant*, v. BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF GREENWOOD KANSAS, *et al.*, *Appellees*.

—

Opinion filed April 6, 2012.

*David P. Troup*, of Weary Davis, LC, of Junction City, for appellant.

*Paul E. Dean*, assistant county attorney, for appellees Board of Greenwood County Commissioners, *et al*.

Before ARNOLD-BURGER, P.J., MALONE and HILL, JJ.

MALONE, J.: Katherine Depew, as successor in interest for Dorothy Barr, now deceased (collectively referred to as Barr), appeals the district court's summary judgment granting an easement across Barr's property to an abandoned private cemetery for the purposes of access by employees of the Board of County Commissioners of Greenwood County (County) to fulfill the County's duties to maintain the cemetery under K.S.A. 17-1305 and for public visitation. Barr claims the district court erred in determining the existence of the access easement and in defining the scope of the easement. She also claims the easement constituted an improper taking of her property without just compensation. We conclude the district court did not err in determining that an access easement exists across Barr's property and that the easement has not been abandoned by nonuse. However, we conclude the district court erred by granting summary judgment in favor of the County as to the scope of the easement, and we remand for an evidentiary hearing to resolve issues as to the physical scope of the easement and the right to public access to the cemetery.

This dispute concerns the various parties' rights and duties relating to a certain piece of landlocked real property (Reserved Property) and the property that surrounds it (Surrounding Property), located in Greenwood County, Kansas. The Reserved Property and Surrounding Property were originally part of a larger property purchased by John Gage by patent from the United States in 1876. In 1888, John Gage deeded the property to his son, John T. Gage, with the following exception:

"[E]xcept [the] right-of-way belonging and deeded unto St. Louis and San Francisco Railway Co.—also except about 2 acres commencing 25 rods west of the SE corner of S 1/2 of SE 1/4 aforesaid, thence running westerly circling south along the south line of the aforesaid right-of-way 89 rods, thence south 11 rods—thence east about 15 rods to north bank of Salt Creek, thence following east along the bank of the creek to a point due south of the starting point, thence north to the place of beginning and used for *family graveyard* and horse [illegible] the railway water tank and in Township 28S of Range 11E." (Emphasis added.)

The cemetery on the Reserved Property contains 16 visible headstones with as many as 30 people buried therein. The 2-acre Reserved Property has never been subdivided or subjected to any

official survey filed of record. Only a portion of the Reserved Property is actually used for gravesites, and the remainder of the property has been used for farming or pasture over the years. There is no road or recognized path leading to the Reserved Property, and it is inaccessible except by crossing the Surrounding Property. A railroad right-of-way runs adjacent to the Reserved Property, but the record does not reflect to what extent the parties can gain access to the Reserved Property by using the railroad right-of-way. The record also does not reflect the distance from the landlocked Reserved Property to the nearest county road. There have been no recorded conveyances of the Reserved Property since the 1888 deed. In 1908, the Surrounding Property was conveyed by John T. Gage to non-Gage family members. Barr acquired title to the Surrounding Property by deed on December 26, 1973.

In 1996, the County began assessing property taxes against the Reserved Property, which was identified in county records as a "family graveyard." Property taxes in the amount of $739.42 went unpaid, and the County initiated a tax foreclosure action resulting in a publicly noticed sheriff's auction, with John T. Gage, Mary Gage, and John Gage, addresses unknown, listed as the owners. When Barr learned of the proposed tax sale, she claimed that she went to the county treasurer's office and tendered payment for the full amount due, but the employee in the county treasurer's office refused to accept the payment. The County later denied Barr's allegation that she attempted to pay the property taxes. The tax foreclosure sale was held on June 2, 2005, at which Stephen McCoy purchased the Reserved Property for $2,300. McCoy later stated that he purchased the Reserved Property for his leisure activity and for hunting. McCoy was aware that the Reserved Property was landlocked but assumed he could gain access by using the now-abandoned railroad right-of-way bounding one edge of the Reserved Property.

After the sheriff's sale, McCoy attempted to negotiate with Barr for an easement across the Surrounding Property to access the Reserved Property, but he was unsuccessful in doing so. On October 27, 2005, McCoy filed suit against Barr, contending that he was entitled to an easement across the Surrounding Property. Barr

joined the County and the Greenwood County Clerk (together, County) as parties to the lawsuit and filed a cross-claim against the County. In her cross-claim, Barr argued that the Reserved Property was a cemetery and that therefore its sale to McCoy was void against public policy and should be set aside. The County filed a counterclaim to Barr's cross-claim, contending that it should be allowed to partition the Reserved Property so that the County would have control over the portion containing the actual cemetery and McCoy would own the remainder. Furthermore, the County alleged that an easement would be required over the Surrounding Property to access the cemetery for maintenance purposes by the County and to allow public visitation. Barr replied that the Reserved Property could not be partitioned, but that if it could, she had acquired title by reversion or adverse possession to the portion not containing the actual cemetery. She asked that the County's request for an easement be denied, but if it was granted that she be paid compensation for the taking of her property.

On December 3, 2007, Barr filed a motion for summary judgment, asking that McCoy's petition for an easement to access the Reserved Property be denied and that her cross-claim to set aside the sale of the Reserved Property be granted. In the alternative, she asked that the noncemetery portion of the Reserved Property be declared her property and that the County be required to maintain the cemetery. The County and McCoy each opposed Barr's motion, but neither party filed cross-motions for summary judgment seeking additional relief from the court.

On March 3, 2008, the district court held a hearing on Barr's motion for summary judgment and heard arguments of counsel. The district court issued a memorandum decision on September 23, 2008. The district court found that the entirety of the Reserved Property was considered a cemetery for purposes of construing the real property rights involved. The district court further determined that cemetery lands are not subject to laws normally pertaining to real property such as abandonment and adverse possession. The district court then found that the County had failed in its statutory duty under K.S.A. 17-1305 to protect the Reserved Property from loss or alienation and that the tax foreclosure sale of the Reserved

Property to McCoy was void and set aside. Likewise, the district court rejected Barr's claim of ownership over any portion of the Reserved Property by reversion or adverse possession. The district court then directed the County to assume immediate control of the Reserved Property.

Finally, the district court granted an easement or public right-of-way across the Surrounding Property for maintenance of the cemetery and public visitation purposes and enjoined Barr from preventing access by the County or any member of the public who wished to visit the cemetery. Specifically, the district court entered the following legal conclusions as to the easement across the Surrounding Property:

"10. As Greenwood County notes in its brief, cemeteries are historically a place the public visits. Whether it is a private burial ground or Resthaven Mortuary and Cemetery in Wichita, Kansas, this Court finds that the public has a vested interest in access to a cemetery in order to pay respects or for historical and genealogical reasons. Greenwood County is directed to take appropriate steps to provide ingress and egress to and from the Gage Cemetery. The Court grants to the County an access right in the nature of a public right of way and/or easement of necessity across defendant Barr's lands for such purposes.

"11. Defendant Barr is enjoined from preventing access to the cemetery grounds by the County or any member of the public who may wish to visit the cemetery. The means of access must remain open. Defendant Barr may not fence out the public or 'hold the keys' so to speak as to someone desiring access to the cemetery."

Barr filed a motion to alter or amend the district court's decision, contending that the district court went beyond the scope of relief requested by the parties and beyond statutory authority in granting an easement for the purpose of public visitation. Barr also asserted that such an expansive easement would create a substantial and unwarranted burden on the Surrounding Property and constituted a taking of her property without just compensation. About 2 years later, on October 20, 2010, the district court issued a letter opinion to counsel denying the motion and reaffirming its previous rulings. With respect to the physical scope of the easement granted across the Surrounding Property, the district court's letter opinion stated: "It would be a fairly simple matter for the County to gravel an appropriate way from the road to the cemetery and for defendant

Barr to fence off her property from the road to prevent cattle wandering away or cemetery visitors from trespassing on her lands." The district court's letter opinion to counsel concluded by stating: "Gentlemen, let us put this case out of its misery."

Barr filed a timely notice of appeal from the district court's judgment. We note from the record that Barr died during the pendency of the motion to alter or amend and was substituted for in the litigation by her daughter and successor in interest, Katherine Depew. For the sake of consistency, we will refer to the defendant as Barr throughout this opinion. On appeal, Barr does not challenge all the district court's findings and legal conclusions entered with respect to the rights of the parties. For instance, the district court found that the entire 2-acre tract constituted and was to be treated as a cemetery. No party is contesting this finding. Also, the district court found that the cemetery could not be sold for payment of taxes, and no party is challenging this conclusion on appeal. In fact, McCoy did not appeal the district court's judgment, and the record reflects that he received reimbursement from the County for the purchase price of the Reserved Property as required in the order. Thus, McCoy is not a party to this appeal.

Barr makes three claims on appeal. First, Barr claims that the district court erred in determining that an access easement still exists across the Surrounding Property. Barr asserts that the easement has been extinguished by abandonment. Second, Barr claims that if an access easement still exists across the Surrounding Property, the district court erred in defining the scope of the easement. Third, Barr claims that the district court's recognition of an access easement for public visitation of the cemetery constituted an improper taking of her property entitling her to compensation.

The standards for granting summary judgment are well known. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When oppos-

ing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

## EXISTENCE OF THE EASEMENT

The parties concede that an implied easement by necessity was created when, by the 1888 deed, John Gage severed his property into two parcels—the landlocked Reserved Property (the dominant estate) and the Surrounding Property (the servient estate)—and conveyed the Surrounding Property to his son while retaining ownership of the Reserved Property. See *Horner v. Heersche*, 202 Kan. 250, 254, 447 P.2d 811 (1968) (implied easement by necessity is created whenever property is completely surrounded by adjoining lands). But Barr contends that the access easement has since been extinguished, a claim that the County denies.

On appeal, Barr advances three theories as to why any access easement has been extinguished: (1) by abandonment, because there is no physical or recorded evidence of the location of any easement and because there is no evidence that any easement has been used by a Gage heir in over a century; (2) by adverse possession; and (3) by lack of necessity, because the Reserved Property can be accessed by the allegedly abandoned railroad right-of-way. But Barr only incidentally raises the theory of adverse possession in her brief and has thus abandoned the argument on appeal. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008). And with respect to lack of necessity, Barr failed to raise that theory before the district court and thus cannot raise the issue on appeal. See *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009).

Thus, the only question properly before this court with respect to the existence of the access easement is whether the easement has been abandoned. The only facts cited by Barr in support of her

theory of abandonment are that there is no record or physical evidence of the location of any access easement and there is no evidence of any Gage heir using an easement to access the Reserved Property within the last century. The County never contested those facts before the district court and does not do so now. Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

In Kansas, it is well settled that an easement may not be abandoned by mere nonuse; rather, actual relinquishment accompanied by intention to abandon must be shown. See *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 677, 750 P.2d 398 (1988) (quoting *Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 109-110, 505 P.2d 749 [1973]). "Mere nonuse of property, lapse of time without claiming or using property, or the temporary absence of the owner, unaccompanied by other evidence showing intention, generally are not enough to constitute an abandonment." *Botkin*, 211 Kan. at 110; see *Edgerton v. McMullan*, 55 Kan. 90, 92, 39 P. 1021 (1895). Barr provides no authority that the general rule in Kansas that an easement may not be abandoned by mere nonuse does not apply to an implied easement by necessity.

Although the issue of abandonment generally presents a question of fact to be determined by the factfinder, there is simply no evidence in this case, other than nonuse of the easement, that would support any inference that the Gage heirs intended to abandon the easement created by the 1888 deed. In its decision on Barr's motion for summary judgment, the district court recognized the existence of an access easement without addressing the origins of the easement or addressing Barr's arguments that any easement had been extinguished, other than to state generally that cemeteries are not subject to ordinary property laws. But the uncontroverted facts establish that an access easement still exists across the Surrounding Property, and the district court's decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. See *Robbins v. City of Wichita*, 285 Kan. 455, 472, 172 P.3d 1187 (2007).

## SCOPE OF THE EASEMENT

After the district court confirmed the existence of the access easement across the Surrounding Property, the district court went further and addressed the scope of the easement. The district court specifically found that the public has a vested interest in access to a cemetery in order to pay respects or for historical and genealogical reasons. The district court directed the County to "take appropriate steps" to provide ingress and egress to and from the Gage cemetery. The district court also enjoined Barr from preventing access to the cemetery grounds by the County or any member of the public who may wish to visit the cemetery. In the letter ruling on the motion for reconsideration, the district court suggested that it would be a fairly simply matter for the County to gravel an appropriate way from the road to the cemetery and for Barr to fence off her property from the road to prevent cattle from wandering away or cemetery visitors from trespassing on her lands.

On appeal, Barr contends that the issue of a public access easement was not properly before the district court because she did not raise the issue in her motion for summary judgment and neither the County nor McCoy filed their own motions for summary judgment nor requested such relief. She also contends that the Reserved Property is a private rather than a public cemetery and that K.S.A. 17-1305 does not vest the County with the authority to open the cemetery to the public. Finally, she argues that the public access easement creates a substantial and unnecessary burden on the Surrounding Property because any roadway built would bisect her pasture and she would be required at her own expense to erect fencing along the roadway in order to keep animals in and keep the public out.

The County argues that, although it did not file its own motion for summary judgment requesting a public access easement, it had raised the issue in its counterclaim and in its response to Barr's motion for summary judgment and therefore Barr should have been on notice that the issue was before the district court. The County also points out that a district court has authority to summarily dispose of a matter on its own motion where there is no

genuine issue of material fact and, giving the benefit of all reasonable inferences that may be drawn from the evidence, judgment must be for one of the parties as a matter of law. See *Phillips v. Carson*, 240 Kan. 462, 474, 731 P.2d 820 (1987). The County further contends that although the Reserved Property is a private cemetery, K.S.A. 17-1305 gives the County the same authority as the original landowner and thus the County may open the Reserved Property for public visitation.

The scope of an implied easement by necessity is determined by the intent that may be inferred from the actual use of the dominant tenement at the time of the creation of the easement as well as any uses that the facts and circumstances show were in the reasonable contemplation of the parties at that time. *Stroda v. Joice Holdings*, 288 Kan. 718, 724-25, 207 P.3d 223 (2009) (relying on Restatement [First] of Property § 484, comment b [1944]). The test for determining the scope of an implied easement by necessity is inherently factual. Where an appellate court reviews a district court's determination of the scope of an easement based on undisputed facts, review is unlimited. *Stroda*, 288 Kan. at 720.

*Physical Scope of the Easement*

Barr's motion for summary judgment requested that McCoy's petition for an easement to access the Reserved Property be denied and that her cross-claim to set aside the sale of the Reserved Property be granted. In the alternative, she asked that the non-cemetery portion of the Reserved Property be declared her property and that the County be required to maintain the cemetery. Barr's motion for summary judgment did not request the district court to determine the physical scope of any easement, and neither the County nor McCoy filed cross-motions for summary judgment requesting such relief. We agree with Barr's contention on appeal that determination of the physical scope of the access easement was not properly before the district court on summary judgment.

Moreover, Barr's statement of uncontroverted facts only included facts relevant to the creation and existence of the easement and the sale of the Reserved Property to pay for the taxes. As to access to the cemetery for maintenance, no evidence was presented

to the district court regarding (1) what kind of equipment the County will need to bring to the cemetery in order to care for the property, (2) whether the abandoned railroad right-of-way can provide suitable access to the cemetery, (3) what is the distance between the cemetery and the nearest county road, (4) what is the most direct route between the cemetery and the nearest county road, (5) whether a roadway or a path is necessary to gain access to the cemetery and if so how wide, and (6) where should the roadway or path be located, (7) to what extent is the Surrounding Property used for farmland or pasture and to what extent will the Surrounding Property be damaged by the construction of a roadway or path, and (8) which party is responsible for maintenance and costs, including any fencing that may be necessary to protect Barr's property. Furthermore, the district court's order merely directed the County to "take appropriate steps" to provide ingress and egress to and from the cemetery without providing any specific orders or guidance on how this task is to be accomplished.

Determination of the physical scope of the easement is inherently factual. Although determination of the scope of an easement becomes a legal question where the facts are undisputed, here the district court was presented with insufficient evidence to determine the physical scope of the easement on summary judgment. Furthermore, the district court's ruling was not specific as to what steps must be taken to provide ingress and egress to the cemetery. We conclude the district court erred by granting summary judgment in favor of the County as to the physical scope of the easement, and we remand for an evidentiary hearing and more specific findings and orders by the district court as to the physical scope of the easement.

*Public versus Private Access to the Cemetery*

In addressing the scope of the easement, the district court specifically found that the public has a vested interest in access to a cemetery in order to pay respects or for historical and genealogical reasons. Based on this consideration, the district court enjoined Barr from preventing access to the cemetery grounds by the County or any member of the public who may wish to visit the

cemetery. Barr contends the issue of a public access easement was not properly before the district court on summary judgment.

In granting summary judgment, the district court found that the County had failed in its statutory duty under K.S.A. 17-1305 to protect the Reserved Property from loss or alienation. K.S.A. 17-1305 provides in relevant part:

> "All private burying grounds not otherwise expressly provided for by will, deed, or in the actual possession of the owner in life, shall be under the *exclusive control* of the county clerk of the county in which said burying ground may be situated; and it is hereby made the duty of said clerk to commence a civil suit or suits for any damages that any other person may do or cause to be done to said burying ground, or to the fence, gates or bars enclosing the same, or of any graves or monuments therein." (Emphasis added.)

As the County points out, K.S.A. 17-1305 was originally enacted in 1870, before the easement in this case was created. The statute was virtually identical to its present form, except that "exclusive control" over private burying grounds was vested in a probate judge rather than in the county clerk. See L. 1976, ch. 145, sec. 41; L. 1977, ch. 109, sec. 12. Thus, the County contends that the parties should have been on notice that the Reserved Property could come under the "exclusive control" of some governmental entity and could be opened to the public by that governmental entity. Barr claims that "exclusive control" as used in the statute only places the County in a caretaker capacity to prevent damage or spoliation to the cemetery but does not allow it to exercise ownership rights such as opening it to the general public.

The law contemplates two classes of cemeteries, public and private. The former is used by the general community, the neighborhoods, or the churches, while the latter is used only by a family or a small portion of the community. See *City of Wichita v. Schwertner*, 130 Kan. 397, 400, 286 P. 266 (1930). The reservation in the 1888 deed states that the Reserved Property was used as a "family graveyard," and there is no evidence in the record that John Gage dedicated the Reserved Property for use by the general community. Furthermore, the evidence before the district court on summary judgment established that no Gage heir had sought permission to visit the cemetery within the last century. Thus, the

cemetery created by the 1888 deed is more accurately categorized as a private cemetery rather than a public cemetery.

The parties agree that maintenance and control of the abandoned Gage cemetery is governed by K.S.A. 17-1305, which explicitly pertains to "private burying grounds." But the statute does not vest the County with rights "as great as the original landowner," as the County suggests. The County does not gain actual title to the property and could not alter the character of the property so that it is used for anything other than a cemetery. Nonetheless, there is nothing in K.S.A. 17-1305 that would *prohibit* the County from allowing the general public to visit a private cemetery under the County's control, as long as the cemetery retains its character as such. And Kansas courts appear to have recognized that there is a public aspect to cemeteries, whether public or private:

"In *Cemetery Ass'n v. Meninger*, 14 Kan. 312, 317, it was said:

" 'A cemetery is as public a place as a court-house, or a market. . . . We may keep away from the court-house, and avoid the market, but the place of the dead none may shun.'

" . . . Several sections of our statutes related to cemeteries. [Citations omitted.] These disclose the public aspect of cemeteries, and something of the vital interest the living have in the places of burial of their relatives and friends." *Schwertner,* 130 Kan. at 400.

An implied easement for access to a private cemetery should be narrow in scope, and the burden on the landowner must be taken into account in granting the easement. Some guidance in defining the scope of an implied easement to a private cemetery is provided by *Hines v. State*, 126 Tenn. 1, 149 S.W. 1058 (1911). In *Hines*, a landowner set aside a portion of land in one of the cultivated fields on his farm as a family burial ground. He later conveyed the portion of the farm surrounding the cemetery to his children, and it was later conveyed to nonrelatives. None of the conveyances explicitly reserved the cemetery, but the *Hines* court found that such reservation was implied. 126 Tenn. at 4-5. The *Hines* court further held that the *descendants* of those buried in the cemetery had rights of burial and rights of access to the cemetery, but the court specified that the rights must be exercised "in a reasonable manner

and at reasonable times, so as not to unnecessarily injure the owner of the farm in its cultivation and use." 126 Tenn. at 4.

Here, the district court enjoined Barr from preventing access by the County or any member of the public who wished to visit the cemetery. We conclude there was insufficient evidence for the district court to make this determination on summary judgment. As indicated earlier, Barr's statement of uncontroverted facts only included facts relevant to the creation and existence of the easement and the sale of the Reserved Property to pay for the taxes. The district court was presented with insufficient evidence relevant to the issue of public versus private access to the cemetery. Although there is some authority supporting the district court's finding that cemeteries are historically a place for public visitation, here the district court failed to take into account the burden on the Surrounding Property by making the cemetery open to the public. The district court's order also drew no distinction between permitting visitation to the cemetery by only Gage-family heirs or by members of the public at large. We conclude the case must be remanded for an evidentiary hearing by the district court to properly determine to what extent, if any, the cemetery grounds must be open to members of the general public.

Finally, Barr claims that the district court's recognition of an access easement for public visitation of the cemetery constituted an improper taking of her property entitling her to compensation. Although Barr raised this issue in her reply to the counterclaim, she did not request this relief in her motion for summary judgment. Furthermore, the district court did not address this issue in its ruling. Because we are remanding this case for the district court to properly determine the scope of the access easement, we deem Barr's final issue to be premature and not ripe for appeal.

In summary, we conclude the district court did not err in determining that an access easement exists across Barr's property and that the easement has not been abandoned by nonuse. However, we conclude the district court erred by granting summary judgment in favor of the County as to the scope of the easement, and we remand for an evidentiary hearing to resolve issues as to the physical scope of the easement, and the right to public access to

the cemetery. In determining the proper scope of the easement, the district court should consider the intent that may be inferred from the actual use of the dominant tenement at the time of the creation of the easement as well as any uses that the facts and circumstances show were in reasonable contemplation of the parties at that time. See *Stroda*, 288 Kan. at 724-25.

Affirmed in part, reversed in part, and remanded with directions.