# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

## RALEIGH

SUSAN SANDERS BARBOUR, STEWART 1996 FAMILY LIMITED PARTNERSHIP,
NEUSE TREE FARM, LLC, AND E. WAYNE STEWART, TRUSTEE OF THE
VELMA H. STEWART IRREVOCABLE TRUST, PLAINTIFFS

v.

JANE HARRIS PATE, AND HUSBAND PRAYSON W. PATE; MAE O. (PARKER) BOLES, AND
PHYLLIS PARKER MASTROCOLA, SINGLE; DEFENDANTS

No. COA13-227

Filed 20 August 2013

1. **Easements—implied by prior use—implied by necessity— scope improperly limited**

    The trial court erred in a case concerning plaintiffs' rights to use a farm path on defendants' property by limiting the scope of their easement implied by prior use and by necessity to farming and timber management uses only. The trial court's findings of fact and conclusions of law did not reflect that the court considered all of the necessary legal principles that determine the scope of implied easements. The portion of the trial court's judgment which limited the scope of plaintiffs' implied easements was vacated and remanded for additional findings of fact and conclusions of law.

2. **Appeal and Error—preservation of issues—failure to enter notice of appeal**

    Defendants' argument that plaintiffs failed to establish the necessary grantor element for an implied easement was not addressed where defendants did not enter a notice of appeal of the trial court's judgment.

1

**3.  Easements—by  prescription—misapprehension  of  law—
      hostile use**

    The trial court erred by concluding that plaintiffs were not enti-
tled to an easement by prescription. The trial court's findings of fact
reflected a misapprehension of the law regarding the hostile use ele-
ment of an easement by prescription. This portion of the trial court's
judgment was vacated and remanded for additional findings of fact
and conclusions of law.

    Appeal by plaintiffs from judgment entered 22 August 2012 by Judge
Thomas H. Lock in Johnston County Superior Court. Heard in the Court
of Appeals 6 June 2013.

*Thomas S. Berkau, P.A., by Thomas S. Berkau, and Spence &
Spence, P.A., by Robert A. Spence, Jr., for plaintiff-appellants.*

*Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by John
W. Narron and W. Thurston Debnam, Jr., for defendant-appellees.*

CALABRIA, Judge.

    Susan Sanders Barbour ("Barbour"), Stewart 1996 Family Limited
Partnership, Neuse Tree Farm, LLC, and E. Wayne Stewart, Trustee of
the Velma H. Stewart Irrevocable Trust (collectively "plaintiffs") appeal
from the final judgment of the trial court. The trial court's judgment
granted plaintiffs easements implied by prior use and by necessity, but
limited the scope of their uses, and additionally denied plaintiffs an
easement by prescription. We vacate and remand.

## I.  Background

    Jane Harris Pate, her husband Prayson W. Pate, Mae O. (Parker) Boles,
and Phyllis Parker Mastrocola (collectively "defendants") own property
located in Smithfield Township, Johnston County, North Carolina. This
case concerns plaintiffs' rights to use a farm path ("the Watson-Parker
path" or "path") on defendants' property. Plaintiffs and defendants are
owners in fee simple of certain tracts of land of varying sizes, all of which
may be traced to a common owner in the nineteenth century. Dr. Josiah
O. Watson ("Dr. Watson") purchased the land now owned by plaintiffs
and defendants for use as a plantation sometime between the 1820s and
the 1840s. Dr. Watson's plantation comprised more than 1,500 acres.

    The Watson-Parker path began at the plantation's northern bound-
ary, River Road (now Brogden Road), and continued in a straight,

perpendicular line for approximately three-fourths of a mile to the plantation home, which was built around 1820. The path then veered west to follow the high ground along a causeway leading down to the Neuse River, the plantation's southern boundary. Use of the path was necessary for travel through portions of the plantation because of the creeks, wetlands, and swamps on the property.

When Dr. Watson died in 1852, he left the entire plantation to his nephews William H. Watson ("William") and Henry B. Watson ("Henry") as tenants in common. The nephews divided the plantation by judicial land division in 1853 ("the division"). Henry received Lot #1, the eastern portion of the property, approximately 827 acres that included the plantation home and all those lands now owned by plaintiffs. William received Lot #2, approximately 691 acres comprising the western portion of the plantation, including the lands now owned by defendants. Both tracts were valued equally at $2,764.00. However, Lot #2 was the more valuable tract per acre, because Lot #1 included more swampland.

No roads or paths appear on the 1853 judicial land division, but the Watson-Parker path extending from River Road to the Neuse River was known to have previously existed. At the time the land was divided, Henry did not have a legally enforceable right of access to River Road.

Dr. Watson and his successors in interest through his nephews used the Watson-Parker path to benefit the land now held by plaintiffs and defendants for farming, timber management, cutting firewood, hunting, fishing, and other recreational uses. Following the nephews' land division, continued use of the path was necessary for the enjoyment of Henry's land.

Plaintiffs and defendants trace their ownership through subsequent divisions of the nephews' lands. Plaintiffs trace their property through the Henry B. Watson chain of title. Barbour is Henry's great-granddaughter. Defendants are not direct descendants of the Watsons, but they are successors in interest to the William H. Watson farm created by the division.

On 5 March 2012, plaintiffs filed an amended complaint against defendants in Johnston County Superior Court seeking to establish the nature and scope of their right to use the Watson-Parker path. Plaintiffs alleged that they possessed a prescriptive easement, an implied easement by necessity, an implied easement by prior use, and an easement by estoppel in the Watson-Parker path. The parties waived a jury trial. On 22 August 2012, the trial court entered a judgment concluding that plaintiffs were entitled to an implied easement by prior use and an easement by necessity, but limited these easements to the historical uses of

farming and timber harvesting and management. The trial court denied plaintiffs' requests for an easement by prescription and an easement by estoppel,[1] concluding they had failed to prove either one by a preponderance of the evidence. Plaintiffs appeal.

## II. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' " *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001)).

## III. Limitations on Plaintiffs' Easement Implied by Prior Use and Easement by Necessity

Plaintiffs argue that the trial court erred by limiting the scope of their easements implied by prior use and by necessity. Specifically, plaintiffs contend that the trial court's findings do not support its conclusion that these easements should be limited to only farming and timber management uses. We agree.

### A. Easement Implied by Prior Use

An easement implied by prior use is established when:

> (1) there was a common ownership of the dominant and servient parcels of land and a subsequent transfer separated that ownership, (2) before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was "apparent, continuous and permanent," and (3) the claimed easement is "necessary" to the use and enjoyment of plaintiffs' land.

*Metts v. Turner*, 149 N.C. App. 844, 849, 561 S.E.2d 345, 348 (2002)(citation omitted). "[A]n 'easement from prior use' may be implied 'to protect the probable expectations of the grantor and grantee that an existing use of part of the land would continue after the transfer.' " *Knott v. Washington Housing Authority*, 70 N.C. App. 95, 97-98, 318 S.E.2d 861, 863 (1984) (quoting P. Glenn, *Implied Easements in the North Carolina Courts: An Essay on the Meaning of "Necessary,"* 58 N.C. L. Rev. 223, 224 (1980)). Since the purpose of an easement implied from prior use

---

1. Plaintiffs do not appeal the trial court's denial of an easement by estoppel. Defendants did not appeal the trial court's judgment.

is to protect the expectations of the grantor and grantee, "its scope and extent is measured by the scope and extent of the use of the land involved which gave rise to the quasi-easement." 1 James A. Webster, Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15.22, at 15-56 (6th ed. 2011)("*Webster's*"); *see also* Restatement (Third) of Property (Servitudes) § 4.1 cmt. e (2000)(The circumstances under which an implied easement is created "may also give rise to inferences as to the intended or reasonably expected terms of the servitude. If the intentions or expectations of the parties can be ascertained, they determine the scope and terms of the servitude.").

In its judgment, the trial court made the following relevant findings regarding the prior use of the Watson-Parker path:

> 20. The Watson-Parker path led to the 1820 plantation home and then followed the high ground along a causeway down to the Neuse River. Josiah O. Watson and his successors in interest through both William H. Watson and Henry B. Watson used the Watson-Parker path to benefit the land now held by the plaintiffs and defendants for farming, timber management, cutting firewood, hunting, fishing, and other recreational [uses] since the 1820's.
>
> . . .
>
> 25. The Watson-Parker path from River Road to the Neuse River was known to have existed prior to the division of the Josiah Watson plantation and the path was used for farming and timber management.
>
> . . .
>
> 51. The historical uses of the Watson-Parker path by the plaintiffs or their predecessors in interest were for farming and timber management.

Based upon these findings, the trial court concluded that "[t]he plaintiffs are entitled to an implied easement by prior use across the lands of the Defendants along the Watson-Parker path for agricultural purposes and for timber harvesting and management, the primary historical purposes of the prior use."

Contrary to the trial court's conclusion, the appropriate standard for determining the scope of an implied easement, as set out above, is not the "primary historical purposes" of the prior use of the easement, but rather "the probable expectations of the grantor and grantee that an

existing use of part of the land would continue after the transfer." *Knott*, 70 N.C. App. at 97-98, 318 S.E.2d at 863 (internal quotation and citation omitted). It is unclear from the trial court's findings which uses of the Watson-Parker path the parties intended to continue after the division. The trial court's findings reflect that, at the time the land was subdivided, plaintiffs' predecessors in interest were using the path for hunting, fishing, and other recreational uses in addition to farming and timber harvesting, and that all of the listed uses have continued "since the 1820's." If the parties expected all of these uses to continue after the property was divided, they necessarily must be included as part of the easement implied by prior use. *See id.*

Thus, we must vacate the portion of the trial court's judgment limiting plaintiffs' easement implied by prior use and remand for findings and conclusions regarding "the use of the land involved which gave rise to the quasi-easement," *Webster's*, § 15.22, at 15-56, at the time the land was divided in 1853, rather than the "primary historical purposes" of the easement. *See 42 East, LLC v. D.R. Horton, Inc.*, ___ N.C. App. ___, ___, 722 S.E.2d 1, 11 (2012) ("[I]t is well established that [f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light." (internal quotations and citation omitted)). In making these findings and conclusions, the trial court should be guided by "the probable expectations of the grantor and grantee that an existing use of part of the land would continue after the transfer." *Knott*, 70 N.C. App. at 97-98, 318 S.E.2d at 863.

### B. Easement by Necessity

"In order to establish an easement by necessity, one must show that: (1) the claimed dominant parcel and the claimed servient parcel were held in a common ownership which was ended by a transfer of part of the land; and (2) as a result of the land transfer, it became 'necessary' for the claimant to have the easement." *Wiggins v. Short*, 122 N.C. App. 322, 331, 469 S.E.2d 571, 577-78 (1996)(internal quotations and citations omitted).

> [I]t is not necessary to show absolute necessity. It is sufficient to show such physical conditions and such use as would reasonably lead one to believe that grantor intended grantee should have the right to continue to use the road in the same manner and to the same extent which his grantor had used it . . . .

*Smith v. Moore*, 254 N.C. 186, 190, 118 S.E.2d 436, 438-39 (1961). "Additionally, necessity may be established if the easement is necessary

to the beneficial use of the land granted, and to its convenient and comfortable enjoyment, as it existed at the time of the grant." *Woodring v. Swieter*, 180 N.C. App. 362, 374, 637 S.E.2d 269, 279 (2006) (internal quotations and citations omitted).

In the instant case, the trial court made the following findings relevant to plaintiffs' claim of easement by necessity:

> 22. The use of the Watson-Parker path was necessary because the creeks, wetlands, and swamps that existed throughout the plantation made travel impossible except along the Watson-Parker path that followed a terrace on the upper part of the plantation and a causeway along the lower part of the plantation to the Neuse River.
>
> . . .
>
> 26. At the time of the division of the property between William H. Watson and Henry Bulls Watson, Henry Bulls Watson did not have a legally enforceable right of access to River Road.
>
> 27. The Watson-Parker path was necessary for the enjoyment of the Henry Bulls Watson land.

Based upon these findings, the court concluded that "[t]he easement claimed by the plaintiffs along the Watson-Parker path was reasonably necessary to the enjoyment of the plaintiffs' land by the plaintiffs and by their predecessors in interest" and that "[t]he plaintiffs are entitled to an easement by necessity across the lands of the defendants along the Watson-Parker path for agricultural purposes and for timber harvesting and management."

The limitations on plaintiffs' easement by necessity again appear to be based upon the trial court's conclusion that the "primary historical purposes of the prior use" of the Watson-Parker path were agricultural purposes and timber harvesting. Nevertheless, as previously noted, the trial court found that the Watson-Parker path was used for additional purposes both prior to and after the division. The trial court's findings do not include a determination of the uses of the Watson-Parker path at the time of the division that "would reasonably lead one to believe that grantor intended grantee should have the right to continue to use the road in the same manner and to the same extent which his grantor had used it." *Smith*, 254 N.C. at 190, 118 S.E.2d at 438-39. Moreover, while the trial court concluded that use of the Watson-Parker path "was reasonably necessary to the enjoyment of the plaintiffs' land by the plaintiffs,"

it does not conclude which uses of the path were reasonably necessary for plaintiffs' "convenient and comfortable enjoyment, as [the uses] existed at the time of the grant." *Woodring*, 180 N.C. App. at 374, 637 S.E.2d at 279. Consequently, we must also vacate this portion of the trial court's judgment and remand for findings of fact and conclusions of law regarding the scope of plaintiffs' easement implied by necessity which utilize the standards set forth above.

### C. Defendants' Argument

**[2]** In their brief, defendants attempt to argue that plaintiffs failed to establish "the necessary grantor element for an implied easement." However, defendants did not enter a notice of appeal of the trial court's judgment and thus cannot challenge the trial court's determination that valid easements implied by prior use and by necessity exist. *See CDC Pineville, LLC v. UDRT of N.C.*, LLC, 174 N.C. App. 644, 657, 622 S.E.2d 512, 521 (2005). Accordingly, we decline to address defendants' argument and the portion of the trial court's judgment which concluded that plaintiffs established valid implied easements remains undisturbed.

### IV. Easement by Prescription

**[3]** Plaintiffs also argue on appeal that the trial court erred by concluding that they were not entitled to an easement by prescription. We agree.

> In order to prevail in an action to establish an easement by prescription, a plaintiff must prove the following elements by the greater weight of the evidence: (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period.

*Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981) (citation omitted).

In the instant case, the trial court made the following findings regarding plaintiffs' claimed easement by prescription:

> 38. The use of the Watson-Parker path by the heirs of Henry Bulls Watson was so well established that anyone in the community, including the successors in interest to the William H. Watson land, knew or should have known that the heirs of Henry Bulls Watson used the Watson-Parker path.

39. The use of the Watson-Parker path by the heirs of Henry Bulls Watson has been both continuous and uninterrupted.

40. The Watson-Parker path has been in the same location as shown on the 1908 QUAD map since the 1820's[.]

Thus, the trial court found that three of the elements of an easement by prescription had been met. However, the trial court did not find that plaintiffs had established the final element, hostile use. Instead, the trial court found:

48. Though she claims a right to use the Watson-Parker path, plaintiff Barbour stated in her deposition that she had never exhibited a hostile or rude attitude towards the defendants or their predecessors in title and that she did not know of her father or mother exhibiting such an attitude.

This finding suggests that the trial court misapprehended the meaning of hostile use as used in the context of an easement by prescription.

This Court has previously explained that

[t]o establish a hostile use of another's land, *it does not require a heated controversy or a manifestation of ill will*; rather, a hostile use is a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right.

*Deans v. Mansfield*, 210 N.C. App. 222, 226, 707 S.E.2d 658, 662 (2011) (emphasis added and internal quotations and citation omitted). Accordingly, the trial court's finding that Barbour and her parents "had never exhibited a hostile or rude attitude towards the defendants or their predecessors in title" is immaterial to a determination of whether the use of the Watson-Parker path was hostile.

The trial court additionally found:

49. In 1979, plaintiff Barbour's sister, Elizabeth Sanders, requested permission from the defendants to use the Watson-Parker path by asking the defendants to sign a timber deed to allow a timber company to use the Watson-Parker path to remove the timber on the plaintiff Barbour's family property as shown in Book 869 Page 213 Johnston County Registry. In 2000, plaintiff Barbour herself requested permission from the defendants to

use the Watson-Parker path by asking the defendants to sign a timber deed to allow a timber company to use the Watson-Parker path to remove the timber on the plaintiff Barbour's property as shown in Book 1950 Page 108 Johnston County Registry.

50. These requests of the defendants to allow the timber companies to use the Watson-Parker path are contrary to the claim of adverse use by the Plaintiffs.

While the trial court's findings would support a conclusion that the use of the Watson-Parker path by plaintiffs and their predecessors was not hostile in 1979, there are no findings which would allow us to determine if any hostile use occurred during the nearly 130 years prior to Elizabeth Sanders' request for permission. In order to establish their prescriptive easement, plaintiffs and their predecessors in interest only needed to engage in a hostile use of the path that was "continuous and uninterrupted for a period of at least twenty years." *Potts*, 301 N.C. at 666, 273 S.E.2d at 287-88. If plaintiffs had done so prior to 1979, an easement by prescription would have been created, and Sanders' request for permission, standing alone, would not extinguish that easement. The trial court's findings demonstrate that plaintiffs continued to use the Watson-Parker path after the request for permission and that those uses exceeded the actual use requested. Ultimately, the trial court's findings do not definitively establish whether plaintiffs and their predecessors in interest engaged in a hostile use of the Watson-Parker path for a period of at least twenty years after the division. Thus, we must vacate the portion of the trial court's judgment which concluded that plaintiffs failed to prove the existence of an easement by prescription and remand for findings of fact and conclusions of law regarding whether plaintiffs or their predecessors in interest ever engaged in a hostile use of the Watson-Parker path for a continuous period of twenty years or more after the division.

## V. Conclusion

The trial court's findings of fact and conclusions of law which limited plaintiffs' easement implied by prior use and easement by necessity to only selected historical uses do not reflect that the court considered all of the necessary legal principles that determine the scope of implied easements. As a result, we must vacate the portion of the trial court's judgment which limited the scope of plaintiffs' implied easements and remand for additional findings of fact and conclusions of law regarding

the scope of plaintiffs' easement implied by prior use and easement implied by necessity.

The trial court's findings of fact also reflect a misapprehension of the law regarding the hostile use element of an easement by prescription. We must also vacate that portion of the trial court's judgment and remand for additional findings of fact and conclusions of law regarding whether plaintiffs or their predecessors in interest ever engaged in a hostile use of the Watson-Parker path for a continuous period of twenty years or more after the division.

On remand, "the trial court [is] free to reconsider the evidence before it and to enter new and/or additional findings of fact based on the evidence." *Friend-Novorska v. Novorska*, 143 N.C. App. 387, 393-94, 545 S.E.2d 788, 793, *aff'd per curiam*, 354 N.C. 564, 556 S.E.2d 294 (2001). However, we note that our vacatur of specific portions of the trial court's judgment does not affect the remaining portions of the judgment. The remainder of the judgment was not challenged on appeal, and therefore, it remains undisturbed. *See Smith-Douglass v. Kornegay; First-Citizens Bank v. Kornegay*, 70 N.C. App. 264, 266, 318 S.E.2d 895, 896 (1984)(When "the propriety of [a] portion of the court's order is not challenged by th[e] appeal, . . . we accordingly affirm it."). Since neither the trial court's findings establishing the existence of implied easements by prior use and by necessity nor the trial court's findings regarding the remaining elements of a prescriptive easement were challenged on appeal, the trial court is bound by those findings on remand. *See 42 East*, ___ N.C. App. at ___, 722 S.E.2d at 12 (On remand of a vacated order, the trial court is generally "free to reconsider the evidence before it and to enter new and/or additional findings of fact based on the evidence, . . . [but] the trial court [i]s bound on remand by any portions of the . . . order affirmed by this Court." (internal quotations and citation omitted)).

Vacated and remanded.

Judges STROUD and DAVIS concur.