**2019 UT App 132**

## THE UTAH COURT OF APPEALS

BRIDGE BLOQ NAC LLC,
Appellant,
*v.*
ZDENEK SORF, CNC MACHINE AND DESIGN INC.,
AND FRS LEASING LLC,
Appellees.

Opinion
No. 20171043-CA
Filed August 1, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 110916014

Leslie Van Frank, Stephen T. Hester, and Bradley M.
Strassberg, Attorneys for Appellant

Paul M. Belnap and Alan R. Houston, Attorneys
for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

POHLMAN, Judge:

¶1     This dispute involves whether Appellees Zdenek Sorf
(Mr. Sorf), CNC Machine and Design Inc., and FRS Leasing LLC
(collectively, Sorf)[1] have an implied easement over property

---

1. We acknowledge that, at times, our use of Sorf to collectively
refer to all three appellees is over-inclusive. However, because
the parties and the district court regularly referred to the
appellees and their interests collectively, we do the same here.

belonging to Bridge BLOQ NAC LLC.[2] The trial court ruled that an easement existed. Bridge appeals, and we affirm.

BACKGROUND

¶2      Bridge and Sorf own adjoining properties separated by a paved alley. Bridge owns the east property and Sorf owns the west property. The alley, which is the subject of this dispute, is on Bridge's property.

¶3      On each property sits a building—the east building and the west building. The west building is approximately one foot from the boundary line between the two properties. The east building is approximately thirty feet to the east of the same boundary line.

¶4      Both properties were once owned by Sorf's predecessor, a company formed by Mr. Sorf and a business partner (Partner). In 2001, the east property was conveyed to Partner, while Sorf retained the west property. After the properties were severed, Sorf continued to use the alley in the same manner it was used before severance. Specifically, Sorf used the alley for ingress and egress, received deliveries to the west building through the alley,

---

2. This appeal was originally taken by Sixth South Properties LLC, which owned the subject property before Bridge. Before oral argument, Sixth South moved under rule 38(c) of the Utah Rules of Appellate Procedure to substitute Bridge as the appellant because Sixth South had conveyed the property to Bridge by special warranty deed. No objection was raised to the substitution, and we granted the motion. We therefore treat Bridge as the plaintiff and appellant throughout this opinion and attribute Sixth South's actions and arguments, both below and on appeal, to Bridge.

and parked in the alley. In addition, before and after severance, a tenant of the west building (Tenant) was given exclusive use of two parking spaces in the southernmost part of the alley. Tenant testified at trial that without those spots, it would "probably have to move" out of the west building.

¶5     Six years after severance, a dispute developed between Sorf and Partner regarding rights to the alley. Sorf filed a Notice of Easement, stating that "[a]n easement . . . in the alley is claimed for pedestrian and vehicle access for the entire length of the alley, for all parking stalls located therein, for garbage receptacles and for storage of raw materials, storage of metal bars and ingots, pallets, and machinery." The Notice of Easement further claimed that Sorf and its predecessors had used the alley "continuously for fifty-one (51) years."

¶6     Through a series of conveyances, the east property— including the alley—came to belong to Bridge, which subsequently brought suit to quiet title. Sorf counterclaimed, requesting (as relevant here) a declaratory judgment upholding the existence of an implied easement.[3]

¶7     As the litigation proceeded, Mr. Sorf was deposed. He testified that when he severed the properties in 2001, he intended to split "everything 50/50" and that he would have "never agree[d]" to someone else owning the alley. He also testified that "from day one, [he] ke[pt] using that property as [his] property . . . for [the] next six years" until he found out he did not own it. "That's when I start[ed] fighting back," explained Mr. Sorf, "because this was not the agreement."

---

3. Sorf asserted other counterclaims, including a request for reformation of the 2001 deed severing the east and west properties. This counterclaim was eventually dismissed as barred by the applicable statute of limitations.

¶8 Mr. Sorf expressed similar sentiments in two declarations. In the first, he stated,

> [Partner] and I agreed to dissolve our business relationship in the year 2001 and at that time we agreed that the alley would be split 50-50, just as we had discussed previously, and that the alley would continue to be used as in the past.
>
> I did not know the alley was part of the property deeded to [Partner] when we ended our relationship, and I believed that we had divided the alley equally.

In his second declaration, he confirmed,

> I NEVER would have agreed to conveyance of the east property to [Partner] if I had known that the alley was located on the east property because the alley is critical to the operation of [the west property].

¶9 Based partly on these statements, Bridge moved for summary judgment on Sorf's sole remaining counterclaim for an implied easement. It argued that there was "no basis to imply" the intent necessary for an implied easement, because "Sorf has made his intent clear by virtue of his . . . sworn testimony in this case." Bridge reasoned that "Sorf intended to *own* half of the alley, not have permission to use it." (Emphasis added.) Because Mr. Sorf stated that he never would have conveyed the east property and alley to Partner in 2001, Bridge asserted that Sorf's claim for an implied easement failed as a matter of law.

¶10 The trial court denied the summary judgment motion. It determined, relying on *Adamson v. Brockbank*, 185 P.2d 264 (Utah 1947), that in the context of implied easements "we're striving [for] an intent that the parties would have had if they'd thought

of it." Thus, while Mr. Sorf's "recollection of his subjective intent" was "probative" for the court, it was "not dispositive." The court concluded that the issue was "entitled to be tried" rather than resolved as a matter of law.

¶11    A jury trial followed. After presentation of the evidence, Bridge moved for a directed verdict. The motion repeated, in part, what had been argued in the motion for summary judgment. That is, Bridge argued (1) that because of Mr. Sorf's sworn testimony there was no evidence "that the intent of the parties was to create an implied easement at the time of severance" and (2) that Sorf "made clear in this case that what [it] seeks is not an easement, but ownership," especially with respect to parking in the alley. Bridge asserted that an easement is a limited, "non-possessory interest in land" and that Sorf "intends to occupy all of the parking spaces" in the alley, "necessarily to the exclusion of [Bridge]." (Cleaned up.)

¶12    The trial court denied the motion for a directed verdict. It again determined that the parties had presented a jury question as to intent. And as to parking, the court concluded that Utah and other states "recognize parking easements." In other words, the court concluded that the law does not foreclose an easement for parking and that there was "evidence for which a jury might conclude that there was a reasonable necessity for parking" at the time of severance.

¶13    The jury was tasked with deciding whether the factual elements of an implied easement were met, and it found each element was satisfied.[4] Specifically, the jury found, by clear and

---

4. "The ultimate determination of whether an easement exists is a conclusion of law," but "the existence of an easement is also a highly fact-dependent question." *Carrier v. Lindquist*, 2001 UT 105, ¶ 11, 37 P.3d 1112. Thus, the jury found the factual elements

(continued…)

convincing evidence,[5] that Sorf's claimed easement was "apparent, obvious, and visible" at the time of severance in 2001; that the claimed easement was "reasonably necessary" to Sorf's use of the west property; that Sorf's use of the claimed easement was "continuous rather than sporadic"; and, finally, that Sorf and Partner at the time of severance "intended, or, having formed no conscious intent, probably would have intended, to create an easement" in favor of the west property.

¶14 After trial, but before the court entered final judgment in the case, Bridge moved for judgment notwithstanding the verdict (JNOV) based primarily on this court's intervening decision in *Judd v. Bowen*, 2017 UT App 56, 397 P.3d 686, *cert. dismissed as improvidently granted*, 2018 UT 47, 428 P.3d 1032. There, this court held that the doctrine of prescriptive easements could not grant a parking right that totally excluded the owner from his property. *Id.* ¶¶ 55, 68. Bridge argued that under *Judd*, "no easement for parking [in the alley could] be established, as a matter of law."

¶15 The trial court denied the JNOV motion and distinguished *Judd*. First, it concluded that *Judd* was a *prescriptive* easement case—not an implied easement case. It reasoned that

---

(…continued)
of an implied easement, but the trial court ultimately granted the easement.

5. The trial court ruled as a matter "of first impression" that because implied easements "'deprive an individual of an interest in real property,'" they must be established by clear and convincing evidence. (Quoting *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 22, 270 P.3d 430.) The parties appear to accept the clear and convincing evidence standard. We therefore assume without deciding that that standard applies.

parties can expressly "contract away their rights to exclusive use" and that the jury found that is what impliedly happened here. The court stated, "This is not a matter of determining whether a prescriptive right can arise through non-exclusive use versus a possessory right that can be obtained only through exclusive use. This is a right that is implied by the circumstances and the parties' actual or probable intent." Second, the court concluded that *Judd* was factually distinguishable. According to the court, *Judd* concerned a narrow, one-lane driveway with limited parking and the *Judd* court "repeatedly emphasized the peculiar facts in that case." By way of contrast, the trial court found in this case that there were a total of around eight parking spaces in the alley and that there was "very little evidence" concerning the extent of Sorf's interference with Bridge's parking rights.

¶16    The trial court then entered final judgment, concluding that "an implied easement over the alley was created in favor of the west property" in 2001 and that the easement covered ingress and egress, deliveries to the west building, and parking. As it relates to parking, the court determined that Sorf has an exclusive easement for daily parking across the two southernmost parking spaces in the alley and a nonexclusive easement for the remaining parking spaces.[6] Accordingly, the court granted Sorf's request for a declaratory judgment and dismissed Bridge's quiet title claim.

¶17    Bridge appeals.

---

6. The court found that when the properties were severed in 2001, "it was the parties' intent that Mr. Sorf be able to continue operating the business in the same way that it had been operated before the separation, which necessarily included leasing [the two parking spaces to Tenant]."

ISSUES AND STANDARDS OF REVIEW

¶18    Bridge first contends that the trial court erred when it denied its motion for summary judgment on the nonexistence of an implied easement. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, viewing the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party." *Stephenson v. Elison*, 2017 UT App 149, ¶ 20, 405 P.3d 733 (cleaned up). We review the trial court's "ultimate grant or denial of summary judgment for correctness." *Id.* (cleaned up).

¶19    Bridge next contends that the trial court erred when it denied its motion for a directed verdict. "A trial court is justified in granting a directed verdict only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Merino v. Albertsons, Inc.*, 1999 UT 14, ¶ 3, 975 P.2d 467. "A motion for directed verdict can be granted only when the moving party is entitled to judgment as a matter of law." *Id.* (cleaned up).

¶20    Bridge next contends that the trial court erred when it denied its JNOV motion. In addressing a JNOV motion, "a trial court must look at the evidence and all reasonable inferences in a light most favorable to the nonmoving party, granting the . . . motion *only* if this examination demonstrates that there is insufficient evidence to uphold the verdict." *Franklin v. Stevenson*, 1999 UT 61, ¶ 6, 987 P.2d 22. We review the trial court's ruling on a JNOV motion for correctness. *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 18, 309 P.3d 201.

¶21    Bridge finally contends that the trial court erred when it determined that Sorf was entitled under the easement to parking privileges, including two parking spots for Sorf's exclusive use.

"Determining the scope of an easement is a question of law." *Conatser v. Johnson*, 2008 UT 48, ¶ 10, 194 P.3d 897, *superseded by statute on other grounds as stated in Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, 416 P.3d 553. We accordingly review for correctness the trial court's determination on the scope of any easement. *Id.*

ANALYSIS

¶22　Bridge's four contentions on appeal break down into two basic inquiries: (I) does Sorf have an implied easement in the alley? and (II) if so, what is the scope of that implied easement?

I. Sorf has an implied easement in the alley.

¶23　The answer to the first question—whether Sorf has an implied easement in the alley—disposes of Bridge's first three contentions. That is, if there is an easement, the trial court did not err in denying the motion for summary judgment, the motion for a directed verdict, or the JNOV motion.

¶24　To imply an easement from prior use, the fact-finder must find evidence of four elements: "(1) that unity of title was followed by severance; (2) that the servitude was apparent, obvious, and visible at the time of severance; (3) that the easement was reasonably necessary to the enjoyment of the dominant estate; and (4) that the use of the easement was continuous rather than sporadic." *Butler v. Lee*, 774 P.2d 1150, 1152 (Utah Ct. App. 1989); *accord Morris v. Blunt*, 161 P. 1127, 1132 (Utah 1916).

¶25　There is not much dispute in this case about these factual elements being met. The first element was undisputed, and the jury found clear and convincing evidence for the remaining three. The jury's factual determinations are not challenged. Sorf,

along with Partner, owned both the east and west properties and, in 2001, severed them (element one). At that time, the alley was apparently, obviously, and visibly used by both the properties (element two). Also at that time, the alley was reasonably necessary to the west property's operations (element three). Finally, Sorf used the alley continuously, rather than sporadically, at the time of the conveyance (element four).

¶26  But for Bridge's argument about intent, our analysis would be finished. Bridge contends that, elements aside, "intent is the key inquiry in deciding whether to imply an easement." In *Butler*, we stated that "whether an easement arises by implication . . . depends on the *intent* of the parties, which must clearly appear in order to sustain an easement by implication." 774 P.2d at 1153 n.1 (emphasis added) (cleaned up); *see also Oak Lane Homeowners Ass'n v. Griffin*, 2009 UT App 248, ¶ 18, 219 P.3d 64 ("Courts are willing to imply an easement because they are convinced that the parties intended to create an easement based on the circumstances accompanying a conveyance of property." (cleaned up)), *aff'd*, 2011 UT 25, 255 P.3d 677. And Bridge argues from these precedents that Sorf cannot have an implied easement because Mr. Sorf never *intended* to have an easement; he wanted to own the alley "50/50."

¶27  The trial court correctly rejected this argument. In *Adamson v. Brockbank*, 185 P.2d 264 (Utah 1947), our supreme court described the intent necessary to imply an easement:

> The inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves. In the latter aspect, the implication approaches in fact, if not in theory, crediting the parties with an intention which they did not have,

but which they probably would have had had they actually foreseen what they might have foreseen from information available at the time of the conveyance.

*Id.* at 270 (cleaned up). Later, in *Butler*, we held that *Adamson* applied even when the deed between the property owners specifically disavowed "any other agreements, including [one for] the disputed easement." 774 P.2d at 1153. Instead of relying on the disavowal in the deed, we looked to the circumstances attending the transaction to discern the parties' probable intent. *Id.*

¶28    Here, Mr. Sorf testified many years after the severance in 2001 that he intended to own the alley equally with Partner. He "did not know the alley was part of" the east property and instead believed that they "had divided the alley equally." And he stated that he "NEVER" would have sold the alley because it was "critical to the operation" of the west property. But our precedent makes clear that these statements are not to be considered in a vacuum. Part of the attendant circumstances of the severance of the east and west properties was Partner's unknown ownership of the alley. And because Sorf was unaware of the actual legal boundary between the two properties at the time of the severance, it was appropriate for the court to allow the jury to credit Sorf with an unexpressed intention that Sorf "probably would have had had [it] actually foreseen what [it] might have foreseen." *See Adamson*, 185 P.2d at 270 (cleaned up). In fact, when viewed in context, Mr. Sorf's statements help confirm the existence of an implied easement. Far from establishing that Sorf was single-mindedly committed to ownership or nothing, his testimony demonstrates the primary importance of the alley to the west property's use and continued enjoyment.

¶29 Because it was possible for the jury to conclude that Sorf and Partner intended, or probably would have intended, to create an easement if Sorf had known that Partner inadvertently acquired ownership of the alley, the trial court did not err in denying Bridge's motion for summary judgment, motion for a directed verdict, or JNOV motion. *See id.*; *Butler*, 774 P.2d at 1153.

## II. The implied easement's scope includes parking.

¶30 Now we must decide the easement's scope, specifically whether the implied easement grants Sorf the right to park in the alley.[7]

¶31 Utah has not yet adopted a test for defining the scope of an implied easement. The trial court determined the easement's scope based on "the parties' intent and necessity existing at the time of severance." And a number of other jurisdictions determine the scope of an implied easement based on the parties' probable expectations at the time of severance. *See, e.g.*, *Tobias v. Dailey*, 998 P.2d 1091, 1095 (Ariz. Ct. App. 2000); *Thorstrom v. Thorstrom*, 127 Cal. Rptr. 3d 526, 539 (Ct. App. 2011); *McCoy v. Barr*, 275 P.3d 914, 921 (Kan. Ct. App. 2012); *Tungsten Holdings, Inc. v. Kimberlin*, 2000 MT 24, ¶ 27, 994 P.2d 1114, *overruled on other grounds by Shammel v. Canyon Res. Corp.*, 2003 MT 372, 82 P.3d 912; *Barbour v. Pate*, 748 S.E.2d 14, 18 (N.C. Ct. App. 2013); *see also* Restatement (First) of Property § 484 cmt. b (Am. Law Inst. 1944) (explaining that the extent of an easement by implication "is to be measured . . . by such uses as the parties might reasonably have expected from future uses of the dominant tenement"). This approach is an "inherently factual" one, *McCoy*, 275 P.3d at 921, with the parties' reasonable expectations being "ascertained from the circumstances existing

7. There is no dispute that, if an easement exists, it would cover ingress, egress, and deliveries.

at the time of the conveyance," *Thorstrom*, 127 Cal. Rptr. 3d at 539 (cleaned up); s*ee also* Restatement (First) of Property § 484 cmt. b.

¶32    We agree with this approach. The trial court found[8] that at the time of severance "it was the parties' intent that Mr. Sorf be able to continue operating the business [out of the west building] in the same way that it had been operated before the separation, which necessarily included leasing a portion of the west property to [Tenant], along with the two parking spaces guaranteed in that lease, and allowing [Sorf's] employees to use the other parking spaces" in the alley. (Cleaned up.) It further found that from 2001, the time of severance, to 2006, the time of the parties' first disagreement, Partner "never restricted or attempted to restrict Sorf or its employees or tenants from parking" in the alley. Bridge does not dispute these findings. Instead, Bridge directs its challenges to the evidence of the parties' subjective intent. We have already rejected Bridge's attempt to undermine the probable intention of the parties based on subjective intent and see no error in the trial court's conclusion that the parties intended that Sorf and Tenant be able to park in the alley after severance. Thus, based on the court's factual findings, we conclude that the parties reasonably expected parking rights in favor of the west property.

¶33    We also conclude that *Judd v. Bowen*, 2017 UT App 56, 397 P.3d 686, *cert. dismissed as improvidently granted*, 2018 UT 47, 428 P.3d 1032, does not, as Bridge contends, compel a different result. First, *Judd* never held, or even suggested, that parking

---

8. After accepting the jury's determination that the factual elements for an implied easement were satisfied in this case, including that the easement is for, among other things, parking, the trial court determined the scope of the easement and supported its determination with additional factual findings.

easements are categorically impermissible.[9] *See id.* ¶ 36. It held only that "[u]nder the circumstances of [that] case," a prescriptive easement could not totally exclude the titled owner from its property. *Id.* ¶¶ 55, 68. The case concerned a "narrow, one-car-wide driveway" that allowed for only limited parking. *Id.* ¶¶ 36, 47–48. In contrast, the alley here provided for a total of approximately eight parking spots, and the trial court found that there was "very little evidence" concerning the extent of Sorf's interference with Bridge's parking rights. Further, the parties used the alley for years, both before and after severance, with no problems.

¶34 Second, *Judd* limited its discussion to prescriptive easements. *E.g., id.* ¶¶ 36, 54, 68. It began by contrasting the ownership rights one can receive through adverse possession with the easement rights one can receive by prescription. *Id.* ¶¶ 37–46. And the *Judd* court concluded that the ability to exclude owners from their property more closely resembles the ownership rights one can acquire only through adverse possession. *Id.* ¶ 49. Here, this distinction is not legally relevant. As the trial court reasoned, parties can expressly grant a parking right (even an exclusive one), and whether parties impliedly grant a parking right (including an exclusive one) depends on the parties' probable expectations. *See supra* ¶¶ 31–32. So if the parties, as here, reasonably expected exclusive use of parking spots after severance, then exclusive use is what the implied easement grants. *Cf. Papanikolas Bros. Enters. v. Sugarhouse*

---

9. Indeed, our supreme court recognized as much when it dismissed its grant of certiorari as having been improvidently granted. *See Judd v. Bowen*, 2018 UT 47, ¶ 17, 428 P.3d 1032. It stated that "since the court of appeals did not make a categorical determination concerning the viability of prescriptive parking easements," it would not be appropriate to address the issue. *Id.*

*Shopping Center Assocs.*, 535 P.2d 1256, 1261 (Utah 1975) (enforcing an agreement providing for a parking easement).

CONCLUSION

¶35    We conclude that an implied easement in favor of the west property exists in the alley. The trial court therefore did not err in denying Bridge's motions for summary judgment, a directed verdict, or JNOV. We further conclude that the implied easement in favor of the west property grants parking rights in the alley, including two exclusive parking spots. Accordingly, the trial court's judgment is affirmed.

———————