**2020 UT App 166**

## THE UTAH COURT OF APPEALS

JOSE MEDINA,
Appellant,
*v.*
JEFF DUMAS CONCRETE CONSTRUCTION LLC
AND JEFF DUMAS,
Appellees.

Opinion
No. 20190654-CA
Filed December 17, 2020

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 180907336

Daniel F. Bertch, Attorney for Appellant

Stephen J. Traynor and Scarlet R. Smith,
Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1      Asserting that his termination resulted from his pursuit of a workers' compensation claim, thus violating public policy, Jose Medina sued his former employer, Jeff Dumas Concrete Construction, LLC and Jeff Dumas (collectively, JDCC). The district court granted summary judgment in favor of JDCC. Medina appeals, and we reverse.

BACKGROUND[1]

¶2 JDCC hired Medina as a laborer on its construction crew in 2015. Medina worked as an at-will employee under the direction of a JDCC supervisor (Supervisor). Supervisor communicated with Medina regarding his work schedule, job sites, vacation, and other time off largely via text message, although sometimes the communication was verbal.

¶3 In August 2017, Medina suffered a work-related injury to his back and shoulder when a large concrete form he was lifting fell and knocked him to the ground. Medina informed management but continued working despite his injury, exacerbating his pain. He did not speak of his injury again until around October 18, 2017, when "he felt his back finally go out" as he lifted a heavy bucket on a different job site. When Medina reported this aggravation, he was told, "Get off the job site right now if you are injured." JDCC thereafter placed Medina on light duty, which lasted until his termination nine months later.

¶4 Following the aggravation of his injury, Medina promptly filed for workers' compensation benefits with JDCC's insurer, the Workers' Compensation Fund of Utah (WCFU). Although WCFU paid for some of Medina's treatment, it eventually denied further treatment "based on a pre-existing pathology in [Medina's] back." Medina subsequently filed a workers' compensation claim with the Utah Labor Commission in March 2018, which WCFU defended on behalf of JDCC. As part of that

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," and we ordinarily "recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified). We follow that practice to the extent possible in this opinion, but the basis for the court's ruling and the arguments presented require that we share JDCC's version of events in some detail.

case, Medina's deposition was noticed up by JDCC's workers' compensation counsel for July 16, 2018.

¶5 Although Medina initially attended physical therapy during work hours, Supervisor soon informed him that he would have to attend therapy on his own time. Nevertheless, due to his back injury, Medina missed work once in November 2017 and nine times between March and July 2018. Each time he missed work, the parties agree, Medina informed Supervisor via text message that he would be absent.[2] Medina also "personally requested and was granted . . . from Jeff Dumas" a vacation from July 2–6, concerning which Medina texted Supervisor on July 1 stating that "the next week I will not be able to go to work."[3]

_____

2. In his memorandum opposing summary judgment, Medina contended that "[a]ny days missed were approved in advance." In support of this claim, he cited his affidavit in which he asserted that he "never missed work without asking for time off, or notifying [Supervisor] that [he] was unable to work due to [his] back injury." Supervisor asserted in an affidavit that for six of his absences, Medina informed him shortly after 4:00 a.m. that he could not make it to work that day. This assertion does not contradict Medina's statement in his affidavit, i.e., that he had always notified Supervisor when he was unable to work. Furthermore, a translation from Spanish to English of the relevant text messages, including the times and dates of the messages, which Medina attached as an exhibit to his memorandum corroborates Supervisor's claim. In its summary judgment order, the district court characterized as uncontested the fact that for several of his absences, "Medina sent . . . text messages to [Supervisor] . . . indicating that he would not be to work that day due to his back condition."

3. The original text messages were in Spanish. Medina attached an English translation of the text messages as an exhibit to his memorandum opposing summary judgment. Although Supervisor also translated some of the text messages as part of

(continued…)

Supervisor responded, "From what I see it looks like you no longer want to work," to which Medina replied, "Yes . . . but I'm [gone]."

¶6 In an affidavit, Supervisor stated that Medina's "repeatedly taking days off work without permission and with short notice left [his] crew short-handed many times and was very frustrating." He also attested that following Medina's week-long absence in July, he told Dumas,

> [Medina] is missing work once or twice a week almost every week. He missed work all of last week. He never asks permission, and never gives me advance notice. He texts me the morning of the day he's missing work that he's not coming in. What should I do with him?

Supervisor stated that Dumas—whom Medina claims had personally given him permission to take the week off—replied, "Just get rid of him."

¶7 Medina informed Supervisor that he would be taking July 16 off "to attend [his] deposition."[4] In his affidavit, Medina acknowledged that "[t]his left [Supervisor] short-handed for the project we were working on, so on that day [Supervisor] took the

---

(…continued)
his affidavit, we use the translations Medina provided, which do not differ in substance from those of Supervisor.

4. In his affidavit, Supervisor denied that Medina notified him of his intended absence on July 16, 2018, and further asserted that Medina "did not communicate to [him] that he was having his deposition taken." And in briefing its summary judgment motion, JDCC contended that it never received actual notice of the deposition from its counsel because the notice was mailed to the wrong address.

remaining workers to a different job site." During the deposition, Supervisor texted Medina, "[Y]ou are fired you don't feel like working anyways if you want to ask [Dumas] but that's all." Medina's counsel later emailed the attorney representing JDCC in the workers' compensation proceeding, inviting JDCC to "rescind the firing and I won't sue for wrongful termination." JDCC did not rescind the termination. In October 2018, Medina initiated the current lawsuit for wrongful termination, alleging that JDCC fired him "because he made a workers compensation claim."

¶8　In its answer, JDCC stated that it did not know Medina was giving a deposition, much less the date of the deposition. It also denied firing Medina in retaliation for his making a workers' compensation claim, instead asserting that

> Medina was fired for not showing up to work for numerous days, without any notice or explanation to JDCC; for failing to answer his telephone in response to calls from employees of JDCC in an effort to determine why he hadn't shown up for work; and for taking a week long unauthorized vacation that was never approved by anyone at JDCC.

JDCC also asserted "that the purported incident" that allegedly caused Medina's injuries "never occurred and was wholly fabricated by [Medina]." JDCC contended that Medina instead "was injured while working for a prior employer, and not while employed by JDCC."

¶9　JDCC later moved for summary judgment. In opposing the motion, Medina focused on five facts[5] that he contended

---

5. In his memorandum opposing summary judgment, Medina also disputed some of JDCC's factual allegations: that he did not seek medical care for his injury; that he never discussed his

(continued…)

created a genuine dispute about whether his workers' compensation claim was a substantial factor in JDCC's decision to fire him:

   a. [JDCC's] knowledge of the pending workers' compensation claim;

   b. The timing of [Medina's] firing during his deposition;

   c. [JDCC's] "silence" in not responding to [Medina's] counsel's offer to allow [Medina] to be reinstated after his firing;

   d. Statements in [JDCC's] Answer demonstrating "[JDCC's] animus" towards [Medina];

   e. Statements made to [Medina] to "get off the job site" following his injury as demonstrating [JDCC's] animus towards workers' compensation claims.

¶10    The district court granted JDCC's motion for summary judgment, concluding that "[i]n analyzing the admissible facts and law in this case, . . . the record before this Court is insufficient for a jury to conclude that [Medina] could meet the 'substantial factor' requirement under Utah law based upon the

_____

(…continued)

injury with management or coworkers; that he did not "show up to work" on certain days, *see supra* ¶ 5 & note 2; that he never informed Supervisor or Dumas of the reason for his week-long absence in July; that he never informed Supervisor or Dumas of the reason for his July 16 absence; and that JDCC terminated him for repeatedly missing work. As discussed in note 1, we view the facts of the case in the light most favorable to Medina in resolving this appeal.

facts advanced by [Medina] in opposition to the present motion." Specifically, the court stated that Medina "may not rely on [each of the five facts] to support the required causal nexus for his claim" because (a) "mere knowledge of a workers' compensation claim is insufficient under Utah law to meet the 'substantial factor' requirement" and "the fact that there was a nearly nine-month interval between his claim filing and his termination shows the temporal disconnect"; (b) the fact that JDCC terminated Medina during his deposition "does not establish that [Medina] was terminated *because* of his workers' compensation claim" and "[t]he fact that there was nearly a nine-month interval between his claim filing and his termination shows the temporal disconnect"; (c) "[JDCC's] silence after being sent a letter from [Medina's] counsel following [Medina's] firing during his deposition has no probative value and does not preponderate in favor of establishing that [Medina's] claim was a 'substantial factor' in [JDCC's] motivation to terminate him"; (d) JDCC's answer alleging that Medina fabricated the incident that caused his initial injury "was made months following [Medina's] termination and after [Medina] had sued [JDCC] for wrongful termination and does not preponderate in favor of support of [JDCC's] improper motivation or state of mind at the time of [Medina's] termination"; and (e) JDCC's "ambiguous statement" to "'Get off the job site'" does not "show [JDCC's] alleged animus towards [Medina] for having a workers' compensation claim."[6] Additionally, relying on *Gordon v. Home Depot U.S.A., Inc.*, 191 F. Supp. 3d 1271 (D. Utah 2016), the court stated that "[t]he multi-month delay between [Medina's] workers' compensation filing and his termination is inconsistent with [his] claims."

---

6. The district court did not explain its rationale for this last conclusion. Perhaps the court viewed the statement as a toss-up in terms of whether it was a sensible instruction for an injured employee, lest he remain on-site and worsen the injury, or whether it was a mean-spirited or unempathetic directive.

¶11    Medina appeals.

ISSUE AND STANDARD OF REVIEW

¶12    Medina challenges the district court's grant of JDCC's motion for summary judgment, specifically the court's determination that he presented insufficient evidence to satisfy the substantial factor test. "We review a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[7] *Heartwood Home Health & Hospice LLC v. Huber*, 2020 UT

_____

7. JDCC argues that because "[d]istrict courts have wide latitude in making determinations of relevance, probative value, and prejudice of evidence," we should review the court's evidentiary determination for an abuse of discretion. JDCC further contends that Medina waived his challenge to the court's summary judgment order because his "appeal overlooks the crux of the court's decision—none of the evidence relied on to support his claim is admissible" under the Utah Rules of Evidence "either because [the facts] are irrelevant under rule 401 or because they are too speculative under rule 403."

We disagree with JDCC's characterization of the court's summary judgment order as consisting of rulings on admissibility under the Utah Rules of Evidence. Before discussing the five relevant facts, the court specifically stated, with our emphasis, that "[i]n analyzing the *admissible* facts and law in this case, [it] concludes that the record before [it] is insufficient for a jury to conclude that [Medina] could meet the 'substantial factor' requirement under Utah law based upon the facts advanced by [Medina]." And following its analysis of the facts, the court concluded by stating, with our emphasis, that "based upon [its] analysis of the evidence submitted by [Medina] to resist [JDCC's] Motion for Summary Judgment, . . . the Court concludes that the *admissible* evidence submitted by [Medina] is

(continued…)

App 13, ¶ 11, 459 P.3d 1060 (quotation simplified). *See also Giles v. Mineral Res. Int'l, Inc.*, 2014 UT App 259, ¶ 6, 338 P.3d 825 (reviewing, for correctness, the district court's determination that the appellant provided insufficient evidence to withstand summary judgment).

ANALYSIS

¶13    Under Utah law, an employer may terminate an at-will employee "for any reason (or no reason) except where prohibited by law." *Touchard v. La-Z-Boy Inc.*, 2006 UT 71, ¶ 3, 148 P.3d 945 (quotation simplified). The decision to discharge an at-will employee is therefore presumed valid, but that presumption may be overcome if, among other things, "the termination of employment constitutes a violation of a clear and substantial public policy." *Id.* (quotation simplified). The discharge of an employee in retaliation for seeking workers' compensation benefits under Utah's Workers' Compensation Act is one such violation of public policy. *Id.* ¶ 48.

---

(…continued)

at best ambiguous, and lacking in sufficient probative value." Although the court did later muddy the waters a bit, as JDCC points out, by stating that "none of [Medina's] five alleged facts provides *admissible* support," because the court never invoked the rules of evidence and given the larger context of the court's discussion of each fact on which Medina relied, we interpret the order as discussing whether the facts were sufficient to satisfy Medina's burden of proof under the substantial factor test, and any discussion of their relevance was limited to that context. Indeed, absent a thorough analysis of the remaining elements of a wrongful termination claim, which the court did not undertake here, such a determination would be inappropriate because evidence that is irrelevant to one element of the claim might prove relevant—and therefore admissible—as to another.

¶14 To prevail on a claim of wrongful termination on the ground that it violated public policy, an employee must first establish a prima facie case by showing "(i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected," i.e., "that the conduct bringing the public policy into play 'was *a* cause of the firing.'" *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 404 (Utah 1998) (emphasis in original) (footnote omitted) (quoting *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (Wash. 1991)). Upon such a showing by an employee, the burden then shifts to the employer to articulate and produce admissible evidence of a legitimate reason for the termination. *Id.* at 405 & n.5. Lastly, "[w]hen faced with evidence of a legitimate reason for termination, the employee must prove" by a preponderance of the evidence "that engaging in the protected conduct was a 'substantial factor' in the employer's motivation to discharge the employee." *Id.* at 405, 409 (quoting *Wilmot*, 821 P.2d at 30).

¶15 Here, the district court presumed, "[f]or purposes of this motion only," that Medina provided sufficient evidence to establish a prima facie case of wrongful termination, thereby shifting the burden to JDCC to articulate and support with evidence a legitimate reason for terminating Medina. The court then concluded that JDCC's articulated reason for "terminating [Medina] for chronically missing work, culminating in a missed week of work in July 201[8], all to the detriment of JDCC," satisfied this burden.[8] As a result, the burden then shifted back to Medina to establish that his filing for workers' compensation

---

8. Our resolution of this appeal does not necessitate that we address whether an employer may fire an employee for absences caused by a work-related injury that forms the basis for a workers' compensation claim. *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 31–32 (Wash. 1991) (discussing the jurisdictional split on this question).

benefits was a substantial factor in JDCC's decision to fire him. Following an analysis of Medina's evidence in support of this contention, the court concluded that Medina "failed to meet his burden in introducing evidence that would create a genuine issue of material fact as to whether his workers' compensation claim was a 'substantial factor' in motivating his firing so as to defeat summary judgment." Accordingly, we limit our analysis to whether Medina presented sufficient evidence to demonstrate a dispute of material fact relevant to his ability to meet the substantial factor test.

¶16   Utah appellate courts have yet to address the substantial factor prong of the wrongful termination analysis in any meaningful detail other than to note that it "is an inquiry that defies precise definition." *See id.* at 410. But as an initial matter, it clearly presents a higher burden than the fourth element of the prima facie case, which merely requires that the employee "show only that the conduct bringing the public policy into play was *a* cause of the firing." *Id.* at 405 (emphasis in original) (quotation otherwise simplified). Otherwise, the employee's satisfaction of the prima facie case would automatically satisfy the substantial factor test, rendering it superfluous.

¶17   Additionally, under the plain meaning of the term "substantial," the employee must show that his or her engagement in the protected activity carried considerable—as opposed to negligible—weight in the employer's decision to terminate the employee. *See Substantial*, New Oxford American Dictionary 1736 (3d ed. 2010) (defining "substantial" as "of considerable importance, size, or worth"); Jean C. Love, *Retaliatory Discharge for Filing a Workers' Compensation Claim: The Development of a Modern Tort Action*, 37 Hastings L.J. 551, 571 (1986) ("Under the 'substantial' or 'significant' factor test, the plaintiff must prove that retaliation was an important factor motivating the discharge.").

¶18   This reading of "substantial" is further supported by the definition of the term in other legal contexts. In discussing the

substantial factor test as applied to the tort of negligence, the Second Restatement of Torts states,

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as *a cause*, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

*Gardner v. Gardner*, 2019 UT 61, ¶ 24, 452 P.3d 1134 (emphasis in original) (quoting Restatement (Second) of Torts § 431 cmt. a (Am. Law Inst. 1965)). *See also Substantial-cause test*, Black's Law Dictionary 1657 (10th ed. 2014) (defining the "substantial-cause test" as "[t]he principle that causation exists when the defendant's conduct is an important or significant contributor to the plaintiff's injuries"). And in defining the term "substantially contributed" in the divorce context,[9] our Supreme Court, relying on the plain meaning of the word "substantial" and the Second Restatement of Torts' definition, concluded that it related to "conduct that was a significant or an important cause of the divorce." *Gardner*, 2019 UT 61, ¶¶ 22, 24, 27.

¶19   On the other hand, the employee's burden under the substantial factor test is not so high that it requires the employee to establish that retaliation was *the sole* motivation for termination or that the employer would not have terminated the employee but for the fact that the employee engaged in

---

9. *See* Utah Code Ann. § 30-3-5(9)(c) (LexisNexis Supp. 2020) (defining "Fault" as "any of the following wrongful conduct during the marriage that *substantially contributed* to the breakup of the marriage relationship") (emphasis added).

protected activity. In other words, the employee need not prove that absent the employee's engagement in protected activity, the employer would not have discharged him or her for the legitimate reason the employer asserts in litigation. *See Wallace v. Milliken & Co.*, 389 S.E.2d 448, 450 (S.C. Ct. App. 1990) (stating that under the substantial factor test, "the claimant must establish that retaliation was an important factor motivating his discharge" but "need not show that the employer discharged him 'solely' because of the workers' compensation claim"); *Hollenback v. Shriners Hosps. for Children*, 206 P.3d 337, 344 (Wash. Ct. App. 2009) ("The plaintiff need not show that retaliation was the only or 'but for' cause of the adverse employment action, but he or she must establish that it was at least a substantial factor.") (quotation simplified). *Cf. Gardner*, 2019 UT 61, ¶ 22 ("Under the plain meaning of the term 'substantially contributed,' the conduct at issue . . . does not have to be the first cause, or the only cause."). Thus, an employee may prevail on an unlawful termination claim if the employer fired the employee for multiple reasons, including the employee's engagement in protected activity—but not where the protected activity, although perhaps *a* reason for termination, did not ultimately play an important role in the employer's decision to fire the employee.

¶20 Turning now to the case at hand, we must determine whether Medina presented sufficient evidence to avoid summary judgment on the substantial factor test—a different inquiry than whether he presented sufficient evidence to prove he was entitled to prevail on his wrongful termination claim. Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, we ask "whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate." *Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (quotation simplified).

¶21    In opposing summary judgment, Medina was entitled to rely on circumstantial evidence to establish that his filing for workers' compensation benefits was a substantial factor in JDCC's decision to terminate him. *See USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 65, 235 P.3d 749 ("[I]nferences drawn from circumstantial evidence . . . may create a genuine issue of material fact."). *See also Wallace*, 389 S.E.2d at 450 ("Because it is highly unlikely that an employer will declare retaliation as the motive for discharge, the claimant must ordinarily rely on circumstantial evidence."); *Hollenback*, 206 P.3d at 344 ("Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose.") (quotation simplified). And in viewing the proffered evidence, we draw "all reasonable inferences in favor of the nonmoving party." *Heslop*, 2017 UT 5, ¶ 21 (quotation simplified). Of course, "to be reasonable, the inference must present something more than pure speculation." *Id.* In other words, an inference is unreasonable if "there is no underlying evidence to support the conclusion." *Id.* ¶ 22 (quotation simplified). *See IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 19, 196 P.3d 588 ("The word 'genuine' indicates that a district court is not required to draw every possible inference of fact, no matter how remote or improbable, in favor of the nonmoving party. Instead, it is required to draw all *reasonable* inferences in favor of the nonmoving party.") (emphasis in original).

¶22    Here, Medina's theory of liability is that JDCC discharged him "in retaliation for a perceived fraudulent workers compensation claim." In the district court, Medina offered five facts in support of his contention that his filing for workers' compensation benefits was a substantial factor in JDCC's decision to terminate him. But on appeal, Medina advances only four of those five facts: that JDCC did not revoke Medina's termination after his attorney alerted it to the questionable timing; that Medina was told to "Get off the job site" when he notified management of the aggravation to his injury; that JDCC stated in its answer that Medina fabricated JDCC's connection to

his injury; and that JDCC terminated Medina during his deposition. Accordingly, we address only those four facts and conclude that three of the four facts were sufficiently shown to satisfy the substantial factor test for purposes of avoiding summary judgment.

¶23   We agree with the district court that JDCC's non-response to the email Medina's counsel sent notifying JDCC that it terminated Medina during his deposition does not support Medina's argument. Medina contends that this fact is "probative of the question whether JDCC fired [him] without knowing that he was exercising his workers compensation rights." But the court already accepted as undisputed the fact that Medina had informed Supervisor that he would be missing work on July 16, 2018, to attend his deposition. And in any event, for purposes of summary judgment, we presume that JDCC had knowledge of the deposition when it discharged Medina. *See infra* note 10.

¶24   Conversely, we agree with Medina that, for purposes of resisting summary judgment, the remaining facts he relies on are sufficient to satisfy the substantial factor inquiry. First, JDCC's statement to Medina after he reported the aggravation of his injury to "Get off the job site right now if you are injured" could, in certain contexts, be evidence of JDCC's animus toward workers' compensation claims. JDCC argues that the statement "can be subject to several interpretations." For example, JDCC suggests that the speaker "might have cared a great deal for Medina and wanted him to seek treatment immediately if he was injured." We agree that, at trial, the factfinder might reasonably infer this intent behind the statement. But at the summary judgment stage, we view "all reasonable inferences drawn [from the facts] in the light most favorable to the nonmoving party." *Heartwood Home Health & Hospice LLC v. Huber*, 2020 UT App 13, ¶ 11, 459 P.3d 1060 (quotation simplified). Accordingly, because it is also reasonable to infer that the speaker made the statement out of frustration at the prospect of a forthcoming workers' compensation claim, we

presume this was the case for purposes of our analysis. And such frustration is certainly probative of JDCC's attitude toward its employees seeking workers' compensation benefits and possible motivation for terminating Medina for doing just that.

¶25    Second, JDCC's belief that Medina fabricated his account of being injured while working for JDCC is relevant to Medina's contention that JDCC fired him "in retaliation for a perceived fraudulent workers compensation claim." The district court determined that JDCC's statement in its answer that "'the purported incident never occurred and was wholly fabricated by [Medina]' . . . does not preponderate in favor of [Medina]" because the statement was made months after JDCC discharged Medina and therefore did not "preponderate in favor or support of [JDCC's] improper motivation or state of mind at the time of [Medina's] termination." We disagree. Although JDCC's answer is not direct evidence of its suspicion that Medina fabricated the incident that caused his injury, it is circumstantial evidence, and for purposes of summary judgment, the statements in its answer are properly treated as admissions where evidence has not been presented to contradict the pleading. *See* Utah R. Civ. P. 56(c)(1)(A); *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439. JDCC made the statement only three months after it terminated Medina. Given the relatively short temporal disconnect between the two events, the jury might reasonably infer JDCC's retaliatory intent at the time it fired Medina. And in the absence of affidavits or other sworn statements contending the contrary, Medina was entitled to rely on JDCC's answer.

¶26    Finally, the fact that JDCC terminated Medina during his deposition in his workers' compensation case supports an inference that it had done so in retaliation for his filing and pursuing a workers' compensation claim. For summary judgment purposes, we assume that JDCC knew, or at least is chargeable with knowing, that Medina was being deposed that

day.[10] The record reflects JDCC's frustration with Medina's continued absences from work—at least many of which Medina attributed to his injury. And given this frustration, it is not unreasonable to infer that Medina missing work to attend a deposition in a case that JDCC allegedly believed to be

---

10. The parties disagree on whether JDCC knew that Medina was being deposed that day. JDCC contends that there is no evidence "that [it] received notice of the deposition" or "that the WCFU attorney informed JDCC of the deposition," and "it is undisputed that the notice of the deposition was mailed to the wrong address." In contrast, Medina stated in his affidavit that he "told [Supervisor] that [he] needed time off on July 16, 2018 to attend [his] deposition." JDCC contends that we should disregard Medina's sworn statement because he "has offered no evidence to support his declaration" and "Medina's statements seem to be contradicted by the text messages between Medina and [Supervisor]."

As an initial matter, Medina did not state whether he told Supervisor about the deposition by text message or in some other way. Thus, the absence of a text about the deposition does not, without more, contradict Medina's claim. And in any event, "a single sworn statement is sufficient to create an issue of fact" although the "affidavit must do more than reflect the affiant's opinions and conclusions." *Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 23, 390 P.3d 314 (quotation simplified). *See also* Utah R. Civ. P. 56(c)(4); *Wasatch Oil & Gas, LLC v. Reott*, 2007 UT App 223, ¶ 35, 163 P.3d 713 ("On summary judgment, the trial court must not weigh evidence or assess credibility.") (quotation simplified). Here, Medina's affidavit stated that he informed Supervisor of his scheduled deposition. And while Supervisor, in his own affidavit, denied that Medina informed him of the deposition, "at the summary judgment phase we must view the facts in the light most favorable to [the nonmoving party]." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 32, 462 P.3d 357. Thus, in reviewing the court's summary judgment ruling, we must assume that Medina informed Supervisor of the deposition.

fraudulent might have been the straw that broke the camel's back, causing JDCC to terminate his employment then and there. Although JDCC might not have terminated Medina based solely on his workers' compensation claim and his absence from work to attend the deposition, under this scenario it would have played a sufficiently important role to satisfy the substantial factor test, thereby precluding summary judgment in JDCC's favor.

¶27 JDCC also contends that, "considering all the undisputed facts, no reasonable juror could conclude that Medina was fired for pursuing a workers' compensation claim because it is equally, if not more likely, that he was fired for too many absences." But this argument reflects a misunderstanding of the substantial factor test. JDCC apparently assumes that the employee must establish that the engagement in protected activity was the sole or primary reason for the termination. But as discussed above, the substantial factor test requires only that the protected activity be an important factor in the decision to discharge the employee, even though there might have been other, legitimate reasons for the termination. *See supra* ¶¶ 16–19.

¶28 Citing *Gordon v. Home Depot U.S.A., Inc.*, 191 F. Supp. 3d 1271 (D. Utah 2016), a federal trial court decision, JDCC also argues that "there is a temporal disconnect between Medina's filing for workers' compensation benefits which severs any apparent causal connection." But a lapse of time between the protected activity and the employer's adverse action—even a significant lapse—while relevant, is insufficient by itself to preclude satisfaction of the substantial factor test. *See* Restatement (Second) of Torts § 433 & cmt. f (Am. Law Inst. 1965) ("[W]here it is evident that the influence of the actor's negligence is still a substantial factor, mere lapse of time, no matter how long, is not sufficient to prevent it from being the legal cause of the other's harm"). Thus, although "[o]ne factor supporting a retaliatory motive is a close proximity in time between the protected activity and the employment action," *Hollenback v. Shriners Hosps. for Children*, 206 P.3d 337, 344 (Wash.

Ct. App. 2009), the employer may not necessarily be able to rely on the reverse to obtain summary judgment. This is especially true in this case where, although there was a gap of many months between Medina's first report of his injury and his termination, there was no gap between his missing work for his workers' compensation deposition and his termination.

¶29 In *Gordon*, there was nearly a two-year time lapse between the employee's filing for workers' compensation benefits and his termination. 191 F. Supp. 3d at 1281. Based on this, the court ruled that the employee's wrongful termination claim failed to withstand summary judgment partially because "there is a temporal disconnect between the protected activity and [the employee's] termination." *Id.* But this statement was coupled with the court's determination that the employee had not provided evidence upon which he could rely to establish that his filing for workers' compensation was a cause of his termination. *Id.* at 1280–81. The court held, based on the fact that the employee had received negative performance reviews in two categories of customer service months prior to his underlying injury, that the negative reviews he obtained following his injury did not "evidence a pattern of hostility that connects [the employee's] discharge to his workers' compensation claims." *Id.* at 1281. The court also determined that the employee could not rely on the fact that he was disciplined for committing an act he characterized as "negligible," because he "provided no evidence to support that characterization." *Id.* The court determined that the employee could not rely on the fact that he was not disciplined for making a racially insensitive comment to a coworker until after he had been injured for a second time because the employer's investigation of the incident had begun prior to that injury and the employee "ha[d] not provided the court with any evidence to suggest that any other associate would have been treated more favorably for engaging in the same behavior." *Id.* at 1281–82. Finally, the employee could not rely on his assertion that the employer encouraged its managers to disincentivize employees from filing for workers'

compensation because he again "failed to provide sufficient evidence to establish such a connection." *Id.* at 1282.

¶30     Here, Medina was initially injured in August 2017, but it was not until October 2017, after he aggravated this injury, that he sought benefits from WCFU. After WCFU denied further treatment "based on a pre-existing pathology in [Medina's] back," he filed his workers' compensation claim with the Utah Labor Commission in March 2018. JDCC terminated Medina that July—nine months after he sought benefits from WCFU but only four months after he filed a claim with the Utah Labor Commission. This temporal gap is significantly smaller than that in *Gordon*. But more importantly, unlike in *Gordon*, there is evidence on which Medina may rely in support of the inference that his filing for workers' compensation played a substantial role in JDCC's decision to discharge him. Accordingly, the temporal disconnect alone, regardless of duration, is insufficient to entitle JDCC to summary judgment.

CONCLUSION

¶31     Because Medina presented sufficient circumstantial evidence to support reasonable inferences that would satisfy the substantial factor test if believed by the ultimate factfinder, the district court erred in granting summary judgment to JDCC. We reverse and remand for trial or such other proceedings as may now be in order.[11]

––––––––––

11. Because Medina prevails on appeal, we deny JDCC's request for attorney fees, premised on rule 33 of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 33(a). We also deny JDCC's request that Medina cover the cost of the transcript of the summary judgment hearing that it wanted in the record. *See id.* R. 12(a)(2).