2024 UT App 73

## THE UTAH COURT OF APPEALS

440 NORTH SF, LLC,
Appellant,
*v.*
VISTA HEIGHTS INVESTMENTS, LLC AND SII MEGADIAMOND, INC.,
Appellees.

Opinion
No. 20220785-CA
Filed May 16, 2024

Fourth District Court, Provo Department
The Honorable Robert A. Lund
No. 210400480

Spencer Macdonald, Attorney for Appellant

James K. Tracy, Joshua L. Lee, and Steve L.
Lundwall, Attorneys for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1 Appellant 440 North SF, LLC (440 North) purchased a residentially zoned lot (Residential Parcel) in Provo, Utah. A road runs between that lot and the neighboring property—a commercially zoned lot (Commercial Parcel) owned by Appellee Vista Heights Investments, LLC (Vista Heights) and upon which Appellee SII MegaDiamond, Inc. (MegaDiamond) runs a diamond manufacturing business. 440 North later realized that the road the diamond business uses to access part of the manufacturing facility lies on the Residential Parcel and sued for trespass and to quiet title, in addition to other claims. Appellees counterclaimed for a declaratory judgment establishing an easement. On a motion for summary judgment, the district court

ruled that the undisputed facts entitled Appellees to judgment as a matter of law and certified its judgment as final. 440 North raises two grounds for reversal. We reject them each and affirm.

BACKGROUND[1]

¶2    This dispute involves two parcels of adjacent real property in Provo, Utah—the Residential Parcel to the east and the Commercial Parcel to the west. Ownership of the properties has changed hands several times over the last decade—including two intervals where they were owned by the same entity. From 2012 to 2015, Novatek, Inc. (Novatek), a company owned by David Hall, owned both the Commercial Parcel and the Residential Parcel. In 2015, Novatek conveyed both properties to another company owned by Hall, New Vistas Property Holdings, LLC (New Vistas). In 2018, New Vistas conveyed the Commercial Parcel to Vista Heights and the Residential Parcel to DRH Holdings, LLC (DRH), which was also owned by Hall. Then, in 2020, 440 North purchased the Residential Parcel from DRH.

¶3    This lawsuit centers around an asphalt road (Road) that follows the east side of the Commercial Parcel and sits mostly on the western edge of the Residential Parcel. The Road is

_____

1. We both recite the facts and draw all reasonable inferences in a light most favorable to 440 North as the nonmoving party on summary judgment. *See USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 33, 235 P.3d 749. "Of course, to be reasonable, [an] inference must present something more than pure speculation," meaning there must be "underlying evidence to support the conclusion." *Medina v. Jeff Dumas Concrete Constr. LLC*, 2020 UT App 166, ¶ 21, 479 P.3d 1116 (cleaned up). Therefore, in our recitation of the facts and analysis, we draw only *reasonable* inferences in 440 North's favor and accept as true any of the district court's conclusions that 440 North left unchallenged.

"approximately 38 feet wide and 210 feet long." The location of the Road corresponds with the approximate location of an easement (RR Easement) that Union Pacific Railroad recorded as early as 1978. Union Pacific laid railroad tracks across the entirety of the RR Easement, and those tracks are now covered by the Road. In 2012, Novatek, the owner of both properties at the time, renovated a large building (Building) on the Commercial Parcel in order to run its diamond manufacturing business. In 2015, MegaDiamond purchased the diamond business from Novatek, and it has since leased the Commercial Parcel from Novatek and later New Vistas, followed by Vista Heights. MegaDiamond continues to run the business out of the Building in the same manner that Novatek did.

¶4 The back of the Building is "only a few feet" from the Road and the property line of the Residential Parcel. The back of the Building includes a research and development space (R&D Space) with "large overhead doors." MegaDiamond uses heavy equipment on the Road (as did Novatek previously) "including semi-trucks and industrial capacity fork lifts to move multi-ton granite boulders" through the doors of the R&D Space. Access to the R&D Space, aside from foot traffic, is possible only through the overhead doors that face the Residential Parcel.

¶5 In 2021, 440 North filed the present lawsuit against Appellees seeking (1) declaratory judgment regarding each party's rights to the Road, (2) to quiet title, and (3) damages for trespass. Appellees brought a counterclaim for declaratory judgment to establish an easement by implication for the Road on the Residential Parcel to benefit the Commercial Parcel. Later, Appellees filed a motion for summary judgment on both the complaint and the counterclaim. The district court granted the

motion, holding that Appellees "established by undisputed facts all of the elements of an implied easement."[2]

¶6    440 North then filed a rule 60(b) motion to set aside the judgment, *see* Utah R. Civ. P. 60(b), raising for the first time the argument that any commercial use of the Road was unlawful because the Residential Parcel was zoned for only residential use. The district court denied the motion, concluding that the zoning information was public record and therefore available before the lawsuit commenced. 440 North appeals.

ISSUES AND STANDARDS OF REVIEW

¶7    440 North raises two issues on appeal. First, 440 North argues that the district court erred in granting Appellees' summary judgment motion.[3] "We review the district court's ultimate grant or denial of summary judgment for correctness," giving no deference to the district court's legal conclusions. *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 15, 406 P.3d 1134 (cleaned up).

¶8    Second, 440 North argues that the district court erred by denying its rule 60(b) motion. "A district court has broad discretion to rule on a motion to set aside a judgment under rule 60(b)." *Weber v. Mikarose, LLC*, 2015 UT App 130, ¶ 11, 351 P.3d

---

2. The district court amended the initial ruling to correct a "one-word typographical error."

3. While 440 North has articulated this as seven separate issues, it actually consists of a single challenge to the court's grant of summary judgment in favor of Appellees. We address 440 North's various concerns in our analysis.

121 (cleaned up). Therefore, we review a district court's denial of such a motion under an abuse of discretion standard. *See id.*

ANALYSIS

I. Summary Judgment Motion

¶9     We turn first to 440 North's contention that summary judgment was inappropriate. In challenging the court's summary judgment order, 440 North raises three subsidiary arguments. First, it claims that genuine issues of material fact precluded summary judgment. Second, it asserts that the district court applied the wrong standard of proof. And finally, it asserts that the elements of an implied easement are not present here, at least not as a matter of law. We address these arguments in turn.

A.     Genuine Issues of Material Fact

¶10     440 North argues that the district court erred in granting Appellees' summary judgment motion because ten genuine issues of material fact precluded entry of summary judgment. Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). In the summary judgment context, "the word 'genuine' indicates that a district court is not required to draw every possible inference of fact, no matter how remote or improbable, in favor of the nonmoving party. Instead, it is required to draw all *reasonable* inferences in favor of the nonmoving party." *IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 19, 196 P.3d 588. "An inference is unreasonable if there is no underlying evidence to support the conclusion." *Medina v. Jeff Dumas Concrete Constr. LLC*, 2020 UT App 166, ¶ 21, 479 P.3d 1116 (cleaned up). "When the facts are so tenuous, vague, or insufficiently established that determining an issue of fact becomes completely speculative, the

claim fails as a matter of law, and summary judgment is appropriate." *Hardy v. Sagacious Grace LC*, 2021 UT App 23, ¶ 21, 483 P.3d 1275 (cleaned up).

¶11 440 North's argument on appeal primarily consists of only a bulleted list delineating each fact it considers in dispute. 440 North gives us no analysis as to why these facts are in dispute or why the district court erred by relying on them. The brief simply states that "an affidavit, as well as other evidence, was presented in the summary judgment proceedings disputing the foregoing matters." 440 North does not explain the content of the affidavit or what this "other evidence" entails, again providing this court with no analysis as to why it should accept its argument. 440 North concludes this two-page argument with the contention that "even a single dispute of material fact is sufficient to overcome summary judgment." While that general proposition is correct, 440 North does not explain how even a single material fact is in genuine dispute here. Just as importantly, 440 North makes no attempt to show how any alleged disputes of fact are material to any of the legal conclusions the district court reached. Such an important connection is not self-evident, at least not to us.[4]

¶12 In *Warner v. Warner*, 2014 UT App 16, 319 P.3d 711, our court faced a similar briefing concern where trust beneficiaries appealed the district court's grant of summary judgment against their breach of fiduciary duty claims. *Id.* ¶ 49. The beneficiaries similarly devoted just two pages to their argument, and, rather than identifying the elements of their breach of fiduciary duty claims, they "simply list[ed] a series of breaches alleged to have been committed by the [t]rustees without any analysis of the pertinence of those breaches or any discussion of how they

---

4. "In both district and appellate courts, the development of an argument is a party's responsibility, not a judicial duty." *Amundsen v. University of Utah*, 2019 UT 49, ¶ 47, 448 P.3d 1224 (cleaned up).

create[d] a factual dispute of legal significance when compared with the facts and arguments made by the [t]rustees." *Id.* ¶ 51. Our court affirmed the summary judgment decision, explaining that the beneficiaries failed to meet their burden on appeal because the "cursory and incomplete description of the procedural, factual, and legal circumstances of the summary judgment proceeding . . . fail[ed] to provide context sufficient . . . to permit meaningful appellate review." *Id.* We similarly have not been provided with sufficient context or analysis to allow us to conclude that genuine issues of material fact precluded summary judgment in this case; therefore, 440 North has failed to meet its burden of persuasion on appeal, and we will not reverse the district court's grant of summary judgment on the basis that genuine issues of material fact remained in dispute.

B.      Standard of Proof

¶13     In a single paragraph, 440 North argues that the district court applied the wrong standard of proof when granting summary judgment, asserting that the claim required a showing of "clear and convincing" evidence. The applicable standard of proof for implied easements appears to be undecided under Utah law. *See Bridge BLOQ NAC LLC v. Sorf*, 2019 UT App 132, ¶ 13 n.5, 447 P.3d 1278 ("The trial court ruled as a matter of first impression that because implied easements deprive an individual of an interest in real property, they must be established by clear and convincing evidence. The parties appear to accept the clear and convincing evidence standard. We therefore assume without deciding that that standard applies." (cleaned up)). It is unnecessary for us to resolve this question to reach a decision in this case. Even assuming without deciding that clear and convincing evidence is the appropriate standard for the sake of 440 North's argument, the claim of error falls short because 440 North fails to show that the district court did not apply that standard or that, if it did, summary judgment was improperly granted.

¶14    A "reviewing court will not presume from a silent record that the court applied an incorrect legal standard but must presume the regularity and validity of the district court's proceedings, and that it applied the correct legal standard, in the absence of evidence to the contrary." *In re P.J.R.*, 2023 UT App 27, ¶ 31, 527 P.3d 1114 (cleaned up), *cert. denied*, 534 P.3d 750 (Utah 2023). When "nothing in the record suggests that the court applied something less than the clear and convincing standard, the appellant cannot establish error." *Id.* (cleaned up). Here, 440 North does not point us to any evidence in the record showing that the district court applied a standard other than clear and convincing evidence. It is true that the district court did not specify which standard it applied, but the court also gives no explicit indication that it applied a standard other than clear and convincing evidence. With the silent record before us, if clear and convincing is the standard, as 440 North argues it is, we must presume that the district court applied that standard. Thus, this claim fails as 440 North cannot establish that the district court erred.

¶15    We note that because this is a review of a grant of summary judgment, we are determining whether Appellees were entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(a). Implicit in that analysis is our consideration of whether the undisputed facts meet the correct standard of proof. Accordingly, while not establishing that a clear and convincing standard applies, for the purposes of review, we assume that that standard does apply, and for the reasons that follow, we sustain the district court's grant of summary judgment.

C.    Implied Easement

¶16    440 North argues that we should reverse the district court's determination that an implied easement exists as a matter of law. 440 North's arguments fall into two categories: (1) Appellees' failure to meet the elements of an implied easement and (2)

additional arguments against the easement's existence. We address each set of arguments in turn.

1.     Elements of an Implied Easement

¶17    An implied easement requires the factfinder to find evidence

> (1) that unity of title was followed by severance; (2) that the servitude was apparent, obvious, and visible at the time of severance; (3) that the easement was reasonably necessary to the enjoyment of the dominant estate; and (4) that the use of the easement was continuous rather than sporadic.

*Bridge BLOQ NAC LLC v. Sorf*, 2019 UT App 132, ¶ 24, 447 P.3d 1278 (cleaned up). 440 North makes arguments concerning the first and third requirements: that Appellees failed to show unity of title followed by severance and that the Commercial Parcel is not landlocked so the easement is not necessary.

a.     Unity of Title Followed by Severance

¶18    440 North argues that the "unity of title followed by severance" element of implied easements is not defined by Utah courts. Pointing to other states, 440 North argues that we should read this first element as requiring ownership of a single tract of land that is then severed. However, we do not find it necessary to look outside of Utah for clarification, as our courts have already answered this question.[5]

---

5. Even if we did find it necessary to look at other states, our conclusion would remain unchanged; that is, under the law of most jurisdictions, an implied easement's requirement of unity followed by severance is met where two separate parcels are

(continued…)

¶19    In *Butler v. Lee*, 774 P.2d 1150 (Utah Ct. App. 1989), our court affirmed a district court's declaratory judgment establishing an implied easement on a parking strip abutting the boundary of two adjacent, but separate, parcels. *Id.* at 1151, 1154. The two separate parcels were initially owned by the same individual, but one was awarded to his spouse in a divorce decree and the other was sold. *Id.* at 1151 (describing the first parcel as "a restaurant and parking lot" and the second as "an *adjacent* parcel abutting the parking lot" (emphasis added)). Even with there being two separate parcels, our court determined that these facts "clearly

---

unified under a single owner before being severed due to a change in ownership. *See, e.g.*, *Manusos v. Skeels*, 330 P.3d 53, 59 (Or. Ct. App. 2014) ("[I]t is . . . well established that 'severance of a parcel' refers to the division of *ownership* of land, not a division that occurs through a platting process or partition but does not change ownership of the parcels."); *Boyd v. McDonald*, 408 P.2d 717, 721 (Nev. 1965) (concluding that an implied easement exists where "the owner of two parcels had so used one to the benefit of [the] other that, on selling the benefited parcel, a purchaser could reasonably have expected, without further inquiry, that these benefits were included in the sale"). Numerous other cases use treatise language to state that "where the owner of an entire tract of land, or of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists," an implied easement exists. *Brewer v. Avinger*, 94 So. 590, 592 (Ala. 1922) (cleaned up); *see also Dudley v. Neteler*, 924 N.E.2d 1023, 1028 (Ill. App. Ct. 2009); *Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶¶ 11–14, 657 N.W.2d 300; *Stowe v. Head*, 728 S.W.2d 120, 127 (Tex. Ct. App. 1987). Rather than addressing the plethora of cases supporting this conclusion, 440 North provides us with largely unhelpful caselaw that either decides the issue on other grounds or discusses an entirely different kind of easement.

show[ed] that unity of title was followed by severance." *Id.* at 1152. 440 North attempts to distinguish *Butler*, arguing that it "is silent on a key issue, namely, whether the two parcels were originally part of a single tract." But as we've outlined, the facts of *Butler* clearly show quite the opposite, which is that two separate parcels unified under a single owner but later severed by a change in ownership met the requirements for an implied easement.

¶20    Furthermore, our court more recently in *Bridge BLOQ NAC LLC v. Sorf*, 2019 UT App 132, 447 P.3d 1278, again affirmed a district court's finding of an implied easement where unity of title involved two separate but adjacent parcels, this time divided by a paved alley. *Id.* ¶¶ 2–4. These two cases are enough for us to reject 440 North's argument and instead follow our court's precedent: the element of unity followed by severance for an implied easement is met when two discrete but adjacent parcels owned by a single individual or entity are then separated due to a change in ownership.[6]

¶21    Here, though two separate parcels, the properties met the unity requirement because they shared a common owner from 2012 to 2018—owned first by Novatek and then by New Vistas. Then, in 2018, the severance requirement was met when New Vistas conveyed the Commercial Parcel to Vista Heights and the

---

6. For clarity, this is not the only circumstance in which the unity followed by severance element may be met, but it is simply one way in which a party may satisfy it. This approach is consistent with the Restatement (Third) of Property, which states that the "parcel whose severance gives rise to creation of the servitude is usually a single parcel under a single ownership" but that "two or more parcels may have been united in a single ownership, in which case the same rule applies when they are severed again." Restatement (Third) of Property: Servitudes § 2.12 cmt. c (Am. L. Inst. 2000).

Residential Parcel to DRH, which later sold it to 440 North. Thus, Appellees did not fail to show unity of title followed by severance.

b.      Reasonable Necessity

¶22     440 North, in three sentences, contends that the district court erred in creating an easement because the Commercial Parcel is not landlocked. However, as 440 North concedes, this is not a requirement for an implied easement. The third element of an implied easement requires only a reasonable necessity, not an absolute one. *Butler*, 774 P.2d at 1154. "[A]n implied easement . . . is not dependent upon the need for a way to go to and from a parcel of land entirely surrounded by land belonging to others or retained by the seller." *Tschaggeny v. Union Pac. Land Res. Corp.*, 555 P.2d 277, 280 (Utah 1976).

¶23     While not landlocked, the easement at issue was necessary for Appellees' heavy equipment to reach the R&D Space, which was otherwise accessible only by foot. With "only a few feet" between the large overhead doors of the R&D Space and both the Road and the property line of the Residential Parcel, it would be practically impossible—absent tearing down and redesigning the entire Building—for MegaDiamond to maneuver its semi-trucks and forklifts carrying "multi-ton granite boulders" into the Building. MegaDiamond would be left with no means of entering the R&D Space with the necessary large equipment and materials if it could not access the doors located on the back of the Building. Therefore, though not absolutely necessary as the only point to access the property, the implied easement was reasonably necessary to use the R&D Space without requiring reconstruction of the Building entirely, and thus the district court did not err in determining that, as a matter of law, use of the easement was reasonably necessary to enjoyment of the dominant estate, regardless of whether the Commercial Parcel was landlocked.

2.      Additional Arguments

¶24    440 North makes three additional arguments against the existence of the implied easement: (1) the creation of an easement "effectively divested" 440 North of its ownership rights, (2) the district court improperly relied on the RR Easement, and (3) the easement is unlawful as it violates the city zoning ordinances.

a.      Divestment of Ownership Rights

¶25    440 North argues that the district court erred in granting summary judgment and thereby creating the easement because it "effectively divested [440 North] of its ownership rights." 440 North relies on *Judd v. Bowen*, 2017 UT App 56, 397 P.3d 686, to support its argument. However, 440 North fails to explain to the court how *Judd*, which involves a prescriptive rather than an implied easement, applies here. *Id.* ¶ 1. Furthermore, 440 North does not explain why we should ignore our court's previous explicit explanation that the principles concerning ownership rights in *Judd* do not apply to implied easements. In *Bridge BLOQ*, our court clearly stated that "*Judd* limited its discussion to prescriptive easements." 2019 UT App 132, ¶ 34. *Bridge BLOQ* went on to explain that *Judd* contrasted the ownership rights gained through adverse possession with the rights granted from an easement by prescription and that the *Judd* court reached the conclusion that "the ability to exclude owners from their property more closely resembles the ownership rights one can acquire only through adverse possession." *Id. Bridge BLOQ* concluded that "this distinction is not legally relevant" when dealing with an implied easement as implied easements depend on the parties' "probable expectations." *Id.* Therefore, we find 440 North's argument unpersuasive and inapplicable to the implied easement at issue.

b.      Reliance on the RR Easement

¶26    440 North contends that the district court erred by relying on the RR Easement—which it argues was abandoned—as a partial basis for creating the new implied easement. The crux of 440 North's argument is that any reliance on the RR Easement was an error because whether the RR Easement had been abandoned remained a genuine dispute between the parties. 440 North claims that Appellees "heavily relied on the supposed significance of this derelict railroad." Appellees, in contrast, argue that this is a mischaracterization. In the summary judgment proceedings below, Appellees used the existence of the RR Easement, which unrebutted evidence showed had been publicly recorded since at least 1978, to show that 440 North "had the benefit of having access to both recorded interests" (the RR Easement) and "unrecorded visible, obvious, and apparent interests (the asphalt road, pipes, boulders, and heavy equipment)."

¶27    Regardless of the extent to which Appellees relied on it, the status of the RR Easement was not relevant to the district court's ultimate conclusion because the court's inquiry was whether Appellees' use of the Road was continuous and reasonably necessary and had been apparent, obvious, and visible to 440 North before it purchased the Residential Parcel. The court concluded that Appellees' use of the Road "established by undisputed facts all of the elements of an implied easement." 440 North does not explain how the abandonment of the RR Easement negates the district court's conclusions as to any of these elements.

¶28    Moreover, the existence of the RR Easement is largely irrelevant. After all, its existence does not create, as Appellees argue, "a genuine issue of fact precluding summary judgment" on any of the four elements of an implied easement. First, the RR Easement does not affect unity of title followed by severance because the Commercial Parcel and the Residential Parcel were unified under the ownership of Novatek and New Vistas

irrespective of the RR Easement. Second, whether the RR Easement was abandoned does not impact the analysis of whether Appellees used the Road in an apparent, obvious, and visible way. Third, the status of the RR Easement has no bearing on whether the use of the Road was reasonably necessary for Appellees to access the R&D Space. Finally, the existence of the RR Easement does not impact the district court's analysis that Appellees used the Road in a continuous, rather than sporadic, way. In sum, the facts and circumstances of the establishment and subsequent abandonment, if any, of the RR Easement are not material to the issues decided by the district court.

c.      Violation of the Zoning Ordinances[7]

¶29    Lastly, 440 North argues that the district court erred in creating what 440 North deems an unlawful easement. 440 North contends that the "court's order necessarily requires [440 North] to violate Provo City Code . . . , which prohibits the use of residentially-zoned properties for commercial purposes." However, as Appellees point out, 440 North does not identify any portion of the district court's ruling that orders 440 North "to do anything, let alone break the law." The district court's grant of summary judgment does not compel 440 North to take any action; instead, it establishes that Appellees have satisfied all the elements of an implied easement. As the court's order explained, "[t]he existence of a property right is different than the ability to use that right in a specific way." An easement alone does not

---

7. Appellees argue that 440 North did not preserve this issue for appeal. However, "if the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 (cleaned up). Because we ultimately resolve this issue in favor of Appellees, we address the merits of 440 North's zoning violation argument without addressing preservation.

require the servient estate owner to do anything beyond allowing the dominant estate owner to use its property right.

¶30 Under the Provo City Code, the city can bring enforcement actions against "any person *responsible*" for a zoning violation. Provo, Utah, Code § 14.42.010(3)(b) (emphasis added). The district court correctly observed that Appellees are entitled to seek a variance should their use of the easement violate zoning ordinances. And if the city decides to bring an enforcement action against Appellees, it may do so, at which point the district court will address the legality of Appellees' use of the easement. But the mere potential for a zoning ordinance violation has no bearing on the validity of the easement. *See, e.g.*, *15 Medway St., LLC v. Oaktree SLR, LLC*, No. 11-P-577, 2012 WL 998501, at *2 (Mass. App. Ct. Mar. 27, 2012) (per curiam) ("Compliance with any local zoning requirements are irrelevant to the validity of the easement itself, which we have already determined is effective and remains in force."). Therefore, whether or not Appellees' use of the easement would violate a zoning ordinance, the district court did not err in creating an implied easement because the only relevant issue before the court was the easement's existence.

## II. Rule 60(b) Motion

¶31 440 North's final argument is that the district court exceeded its discretion in denying 440 North's rule 60(b) motion to set aside the court's summary judgment order. *See* Utah R. Civ. P. 60(b). A rule 60(b) motion provides the movant with relief from a judgment or order upon a showing such as "mistake, inadvertence, surprise," or "newly discovered evidence." *Id.* 440 North argues that the order was "necessarily" the product of mistake, inadvertence, surprise, or excusable neglect, but 440 North does very little to explain why that is so. 440 North contends that the "illegality" of the easement due to the zoning violation is sufficient grounds for relief under rule 60(b). However, as we have discussed, the creation of the easement does

not force either party to take any action, nor does it encourage the violation of the zoning ordinances; thus, we remain unpersuaded by this argument.

¶32    440 North "alternatively or additionally" argues that newly discovered evidence, specifically a "letter from Provo City—dated nearly a month *after* the [summary judgment order]—prohibiting [440 North] from allowing its residentially-zoned property to be used for any 'commercial, industrial, agricultural, etc.' purpose" was a sufficient basis for the motion. To succeed on a rule 60(b) motion on the basis of newly discovered evidence, the party must establish the existence of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under [r]ule 59(b)." *Id.* R. 60(b)(2). The discoverability deadline under rule 59(b) is "no later than 28 days after entry of the judgment." *Id.* R. 59(b).

¶33    We agree with the district court that the "zoning map and zoning ordinances are a matter of public record and have been so since before this lawsuit commenced" and that 440 North did not exercise due diligence in addressing the zoning issue before the court's ruling. 440 North acknowledges the district court's reasoning but does not provide us with any argument as to why the district court's analysis constituted an abuse of discretion. Instead, 440 North argues that the court's reasoning "militates against Appellees—the moving parties—at *least* as much as it does against [440 North]." As Appellees point out, 440 North all but concedes here that it did not act with reasonable diligence to address the issue and does not explain why Appellees had any obligation to raise the issue. As 440 North was aware of the zoning ordinances pertaining to each parcel throughout the entirety of this lawsuit, we do not see how the district court exceeded its discretion by determining that the evidence of the zoning regulations was not newly discovered evidence. Therefore, we

affirm the district court's decision to dismiss 440 North's rule 60(b) motion.

## CONCLUSION

¶34    440 North fails to meet its burden of persuasion for each of its arguments—first, that the district court erred in granting Appellees' motion for summary judgment and, second, that the district court erred by denying 440 North's rule 60(b) motion.

¶35    Affirmed.

_____